MILLER v SWANSON

Docket No. 78-3174. Submitted December 5, 1979, at Grand Rapids.—
Decided January 22, 1980.

Arnie Miller underwent a series of two operations to correct a
deformity caused by a previous injury to his wrist. After the
first operation Miller experienced pain in his wrist, and x-rays
disclosed a foreign object in the wrist. Prior to the second
operation Miller signed an agreement with Alfred Swanson,
M.D., the operating physician, and Orthopedic Reconstructive
Surgeons, P.C., the professional corporation under which Dr.
Swanson acted, to arbitrate any claims or disputes "which may
arise in the future out of or in connection with" Miller's
medical care. The day before the second operation Miller signed
a similar agreement with Blodgett Memorial Hospital. During
the second operation Dr. Swanson removed a surgical needle
which had been imbedded in Miller's wrist. After the time
period allowed for revocation of the arbitration agreements had
expired Miller brought an action for damages against Dr.
Swanson, Orthopedic Reconstructive Surgeons and Blodgett
Memorial Hospital. The defendants made a motion to compel
arbitration, and the Kent Circuit Court, Roman J. Snow, J.,
granted the motion. A settlement was reached with Blodgett
Memorial Hospital, but Miller appeals by leave granted as to
the other defendants, alleging that the arbitration agreement
does not apply to the first operation and that, therefore, his
action in circuit court is not precluded by that agreement.
*Held:*

1. The terms of the arbitration agreement are unambiguous
and apply only to claims arising subsequent to the date of the
agreement. Because the agreement is unambiguous it is not
susceptible to a construction which would include claims re-
lated to medical services performed in the past as well as those

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Arbitration and Award §§ 12, 54.
[2] 5 Am Jur 2d, Arbitration and Award § 75.
[3] 5 Am Jur 2d, Arbitration and Award § 167.
[4] 5 Am Jur 2d, Arbitration and Award § 54.

performed in the future. Therefore, the matter is not subject to arbitration under the agreement.

2. The plaintiff's malpractice claim arose at the time that the malpractice occurred or was discovered. The defendants' contention that the claim did not arise until the plaintiff filed his lawsuit is without merit.

Reversed.

1. ARBITRATION AND AWARD — ARBITRABILITY — CONTRACTS.

The arbitrability of an issue in a contract is ascertained through a three-stage inquiry: (1) is there an arbitration agreement in a contract between the parties, (2) is the complaining party's claim on its face, or arguably, related to the contract, and (3) is the dispute expressly exempt by the terms of the contract.

2. ARBITRATION AND AWARD — ARBITRABILITY — BURDEN OF PROOF.

A party who seeks to avoid arbitration under an arbitration agreement has the burden of showing nonarbitrability of the matter in question.

3. ARBITRATION AND AWARD — APPEAL AND ERROR — CLEAR ERROR.

A trial court's finding that an issue is arbitrable under an arbitration agreement between the parties will be reversed on appeal only if it is clearly erroneous.

4. ARBITRATION AND AWARD — STATUTES — CONTROVERSY.

The word "controversy" used in a statute controlling arbitration agreements does not necessarily mean a cause of action or a complaint filed in court; a controversy may arise under the statute without the filing of a lawsuit (MCL 600.5001; MSA 27A.5001).

*Norman C. Halbower,* for plaintiff.

*Hillman, Baxter & Hammond* (by *Douglas W. Hillman* and *David C. Myers),* for defendants.

Before: BRONSON, P.J., and ALLEN and R. M. MAHER, JJ.

ALLEN, J. Does an agreement to arbitrate, drawn pursuant to the provisions of the Malpractice Arbi-

tration Act,[1] and entered into after a first operation but prior to a second operation, preclude a suit in circuit court against the operating physician for negligence occurring during the first operation? On June 7, 1978, the Circuit Court for Kent County, having answered this question in the affirmative, entered an order staying plaintiff's suit in circuit court and directed the parties to proceed with arbitration. Plaintiff appeals by leave granted. The question presented is of first impression.

In April, 1972, plaintiff severely injured his right wrist in a chain saw accident. He was referred by his family physician to defendant Dr. Alfred Swanson, who allegedly recommended a two-step operative procedure to correct the deformity in plaintiff's right hand caused by the accident. The first operation was performed December 8, 1975, at Blodgett Memorial Hospital. Following the operation plaintiff claims he experienced sharp pains in his wrist. X-rays were taken which, according to plaintiff, disclosed a needle-shaped object imbedded in plaintiff's wrist. But despite the disclosure in the x-rays, plaintiff alleges, defendant doctor assured plaintiff that nothing was amiss.

A second operation was scheduled at Blodgett Memorial Hospital for May 14, 1976. On February 27, 1976, some 10 weeks prior to the second operation but 11 weeks after the first operation, plaintiff voluntarily signed a standard form arbitration agreement. Under the agreement, plaintiff agreed with Dr. Swanson and Orthopedic Reconstructive Surgeons, the professional corporation under which Dr. Swanson acted, to arbitrate any claims or disputes (except charges for services rendered)

---

[1] MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.* 1975 PA 140, effective September 1, 1975.

"which may arise in the future out of or in connection with my medical care". On May 14, 1976, Dr. Swanson performed the second operation, during the course of which he removed a surgical needle found imbedded in plaintiff's wrist.

In October 1976, plaintiff attempted to revoke the arbitration agreement but was unable to do so because the 60-day period allowed for revocation under § 5041(5) of the statute, MCL 600.5041; MSA 27A.5041, had long expired. On October 10, 1977, plaintiff filed suit in circuit court charging Dr. Swanson with fraud, negligence and misrepresentation, and charging Blodgett Memorial Hospital with negligence. Defendants answered and moved to compel arbitration.[2] Following hearing on the motion, the trial judge, on June 2, 1978, granted the motion, saying:

"Our Court of Appeals has stated in the case of *American Fidelity Fire Insurance Co v Barry,* 80 Mich App 670 (1978) that:
" 'The arbitrability of an issue in a contract is ascertained through a three-stage inquiry: (1) Is there an arbitration agreement in a contract between the parties? (2) Is the insured's claim "on its face" or "arguably" related to the contract? and (3) is the dispute "expressly exempt" by the terms of the contract?'
"In this case there is a signed arbitration agreement with both the hospital and Dr. Swanson. The claim of the plaintiff is arguably related to the agreements that were signed, and there is no express exemption in the terms of the arbitration agreements of whatever may have happened in December of 1975. Therefore, this Court will order the parties to proceed to arbitration."

In January, 1979, a settlement was reached

---

[2] On May 13, 1976, plaintiff signed an agreement to arbitrate claims against Blodgett Memorial Hospital. The agreement was on a form similar but not identical to the arbitration agreement signed February 27, 1976, with Dr. Swanson. See also, footnote 3, *infra.*

between plaintiff and defendant Blodgett Memorial Hospital. On March 12, 1979, this Court granted plaintiff leave to appeal the circuit court's ruling regarding the claim against Dr. Swanson and the professional corporation under which he did business.

In determining whether defendants' motion to compel arbitration should be granted, the trial court was correct in applying the three-pronged test set forth in *American Fidelity Fire Ins Co v Barry*, 80 Mich App 670, 674-676; 264 NW2d 92 (1978), *lv den* 402 Mich 915 (1978), and again stated in *Clinton Twp v Contrera*, 92 Mich App 297; 284 NW2d 787 (1979). Also, both parties agree that parts (1) and (3) of the *Barry* test are met. Thus, the narrow issue before us is whether plaintiff's claim is "on its face or arguably related to" the arbitration agreement which plaintiff signed February 27, 1976. The burden is on plaintiff to show nonarbitrability. *Kaleva-Norman-Dickson School Dist No 6 v Kaleva-Norman-Dickson School Teachers Ass'n*, 393 Mich 583; 227 NW2d 500 (1975). A trial court's finding that an issue is arbitrable will be reversed on appeal "only if it is clearly erroneous". *Ferndale Education Ass'n v School Dist for the City of Ferndale #2*, 67 Mich App 645, 649; 242 NW2d 481 (1976). With these rules in mind, we address the issue presented.

The arbitration agreement of February 27, 1976, reads as follows:

### "ARBITRATION AGREEMENT

#### Physician-Patient Out-Form

"I understand that my physician(s) and I by signing this document agree to arbitrate any claims or disputes (except for disputes over charges for services rendered)

*which may arise in the future* out of or in connection with my medical care.

"I understand that Michigan Law gives me the choice of trial by judge or jury or of arbitration. I understand that arbitration is a procedure by which a panel that is either mutually agreed upon or appointed decides the dispute rather than a judge or jury. I freely choose arbitration, and I agree that a judgment of any circuit court may be rendered upon any award or determination made pursuant to this agreement. I also understand that any arbitration will be conducted in accordance with Michigan Law and the Michigan Medical Arbitration Rules, as approved by the Commissioner of Insurance.

"I understand that this agreement to arbitrate is binding on me and all my agents, representatives and heirs and assigns, as well as on my physician(s). I also understand that if my physician(s) act(s) as an employee of a Professional Corporation or as an employee or member of a partnership when providing my medical care, the Professional Corporation or partnership is also bound by this agreement.

"This agreement *shall apply to any future claims or disputes* arising out of or in connection *with medical care received* over a period of one year *from this date.*

"I certify that I have read this agreement or have had it read to me and that I fully understand its content and execute this agreement of my own free will. I have received a complete copy of the booklet which explains this agreement.

"THIS AGREEMENT TO ARBITRATE IS NOT A PREREQUISITE TO HEALTH CARE OR TREATMENT, AND MAY BE REVOKED WITHIN 60 DAYS AFTER EXECUTION BY NOTIFICATION IN WRITING." (Emphasis added.)

Defendants contend that the February arbitration agreement is ambiguous as to whether its terms relate back to the December surgery, and that since it is ambiguous, it necessarily is "arguably related" thereto. We disagree, since we con-

clude that the agreement on its face refers to *future* medical services rendered by Dr. Swanson. On this issue we do not find the agreement ambiguous. Paragraph four specifically states:

"This agreement shall apply to any *future* claims or disputes arising out of or in connection with medical care received over a period of one year *from this date."* (Emphasis supplied.)

To argue that a claim is arbitrable does not make it "arguably related" where, as here, the language of the controlling agreement is unambiguous. To hold otherwise would make all claims arising between the parties subject to arbitration by the convenient expedient of arguing that the claims are related to the matter at issue. Defendants contend that the agreement is ambiguous because the phrase "in connection with medical care received" is susceptible to a construction which includes medical care received both in the past and in the future. Had these been the only words, we would agree. But, as is apparent, that language is qualified by the words "over a period of one year from this date".

At the trial court hearing and upon appeal, defendants assert that the arbitration agreement of February, 1976, could not have been signed at the time of the first operation because the medical malpractice statute was "not implemented" until January 1, 1976. However, the Malpractice Arbitration Act, 1975 PA 140, *supra,* was enacted July 9, 1975, with an effective date of September 1, 1975.

While great reliance is placed on the fact that Dr. Swanson's medical services were to be conducted in a two-step operative procedure, we note the only evidence to that effect is two hospital

records written by defendants and prepared by defendants after they had the opportunity of learning of the alleged malpractice claim. But, assuming *arguendo* such to be true, it does not follow that the agreement may be related back to the December surgery, when the agreement expressly refers to "future claims" for medical care received over a period of one year "from this date".[3]

Finally, we refer to paragraph one of the agreement which states that by signing the agreement the patient agrees with the physician to arbitrate any claims "which may arise in the future". Defendants contend that the dispute with Dr. Swanson did not arise until plaintiff filed his lawsuit in October, 1977. We disagree. MCL 600.5001; MSA 27A.5001 reads:

> "A provision in a written contract to settle by arbitration under this chapter, *a controversy thereafter arising* between the parties to the contract, with relation thereto, and in which it is agreed that a judgment of any circuit court may be rendered upon the award made pursuant to such agreement, shall be valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the rescission or revocation of any contract." (Emphasis added.)

We do not construe the word "controversy" to mean the same as a complaint filed in court or a cause of action. Had the Legislature so intended, we believe it would have said so. The argument that a controversy cannot arise under this statute until a lawsuit is filed is not persuasive. The

---

[3] The standard form arbitration agreement signed with the hospital on May 13, 1976, does not contain the language appearing in paragraph 4 of the agreement signed February 27, 1976, with Dr. Swanson. Plaintiff's brief seems to mistakenly assume both agreements were signed May 13, 1976.

statute was enacted in response to a medical malpractice crisis. As such, it is a remedial statute. Remedial statutes are to be liberally construed. *In re School District No 6,* 284 Mich 132, 144; 278 NW 792 (1938).

Reversed, costs to plaintiff.