KUKOWSKI v PISKIN

Docket No. 65632. Argued October 15, 1981 (Calendar No. 15).—
    Decided December 8, 1982. Rehearing denied 417 Mich 1103.
Jacqualine Kukowski and Clement Kukowski brought an action
    against M. S. Piskin, M.D., alleging negligence and malpractice
    in the administration of a drug to Jacqualine Kukowski which
    caused the total loss of her vision. The defendant moved to
    dismiss the action on the ground that under the terms of
    arbitration agreements between Jacqualine Kukowski and St.
    Mary's and Kent Community Hospitals, where she was treated
    by the defendant, and agreements between Dr. Piskin and the
    hospitals, the plaintiffs were obligated to submit their claim to
    arbitration. The Kent Circuit Court, George R. Cook, J., denied
    the motion. The Court of Appeals, Allen, P.J., and D. F. Walsh
    and McDonald, JJ., reversed (Docket No. 44045). The plaintiffs
    appeal.
    The judgment of the Court of Appeals was affirmed by an
    equally divided Court.
    Justice Coleman, joined by Chief Justice Fitzgerald and Jus-
    tice Ryan, would hold that the arbitration agreements in this
    case are unambiguous and require Jacqualine Kukowski to
    submit her claim against Dr. Piskin to arbitration.
    1. Jacqualine Kukowski entered into two agreements with
    Kent Community Hospital and one with St. Mary's Hospital
    which provided for arbitration of disputes arising out of health
    care rendered to her in the hospitals by an independent staff
    doctor who had agreed to arbitrate. Dr. Piskin was an indepen-
    dent staff doctor who had entered into agreements with each
    hospital to submit disputes arising out of the care he rendered
    to patients in the hospitals to arbitration. The agreements were
    forms approved by the Commissioner of Insurance. The lan-
    guage of the agreements plainly disclosed the terms of the
    agreements and adequately communicated the information re-
    quired by the medical malpractice arbitration act.
    2. The act provides for arbitration between hospitals and

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 376.
    Arbitration of medical malpractice claims. 84 ALR3d 375.

patients and between hospitals and doctors. An agreement between a hospital and a patient extends to independent staff doctors who agree to arbitrate and who provide surgical or medical care in the hospital, including negligent surgical or medical procedures. The sections of the act which refer to hospitals and patients and to hospitals and doctors are interrelated and clearly provide for arbitration of claims by patients against doctors for services rendered in hospitals. The act is an all-inclusive plan to implement the public policy of speedy and flexible resolution of such disputes by voluntary submission to arbitration.

Justice Kavanagh, joined by Justices Williams and Levin, would hold that there was no agreement to arbitrate between the parties in this case.

1. The medical malpractice arbitration act provides for two types of arbitration agreements, one between a health care provider (*i.e.,* a doctor) and patients, and the other between hospitals and patients. The act does not provide for a single agreement binding on a patient, a hospital, and a health care provider. While the parties may effect such a result by agreement, in this case they did not.

2. The agreement executed by Jacqualine Kukowski with the hospitals requires arbitration of disputes arising out of health care or treatment provided by the hospitals. No agreement between Mrs. Kukowski and Dr. Piskin was executed. Thus, because she did not agree to arbitrate with Dr. Piskin, she is not required to do so.

3. While arbitration is desirable as a method of resolving disputes arising from health care or treatment, the Legislature has not sought to compel arbitration absent agreement between the parties involved. The Supreme Court, under the guise of construction of a contract, may not effect such a policy.

99 Mich App 1; 297 NW2d 612 (1980) affirmed by an equally divided Court.

OPINION BY COLEMAN, J.

1. ARBITRATION — MEDICAL MALPRACTICE — PATIENTS — HOSPITALS — HEALTH CARE PROVIDERS.

*The provisions of the medical malpractice arbitration act for arbitration agreements between patients and hospitals and between patients and independent staff doctors who provide health care in the hospitals are interrelated and require a patient who enters into such an agreement with a hospital to submit claims against an independent staff doctor arising from*

*surgical or medical care provided by the doctor in the hospital to arbitration (MCL 600.5041, 600.5042; MSA 27A.5041, 27A.5042).*

OPINION BY KAVANAGH, J.

2. ARBITRATION — CONTRACTS — MEDICAL MALPRACTICE — PATIENTS — HOSPITALS — HEALTH CARE PROVIDERS.

*The medical malpractice arbitration act provides for arbitration agreements between patients and hospitals and between patients and health care providers but does not provide for single agreements which would be binding on patients, hospitals, and independent health care providers; while the parties may effect such a result by agreement, absent such an agreement arbitration is not required (MCL 600.5041, 600.5042; MSA 27A.5041, 27A.5042).*

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Stanley S. Schwartz* and *Richard D. Toth),* for plaintiffs.

*Cholette, Perkins & Buchanan* (by *John C. Buchanan* and *Robert J. Riley)* for defendant.

COLEMAN, J. *(to affirm).* This case is of singular importance because it involves arbitration agreements commonly in use by physicians, hospitals and patients throughout Michigan. The agreements are on forms specifically approved by the Michigan Commissioner of Insurance and are executed in furtherance of the legislative intent to foster arbitration of disputes among "health care providers", hospitals, and patients as provided in the medical malpractice arbitration act of 1975, MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.*

Defendant, Dr. M. S. Piskin, appealed the circuit court's denial of a motion to dismiss or to compel arbitration. The Court of Appeals reversed and remanded to the circuit court. Plaintiffs, Jacqualine Kukowski and Clement Kukowski, now challenge the decision of the Court of Appeals which

held the agreements signed by Jacqualine Kukow-
ski to be unambiguous and obliged her to arbitrate
any dispute which arose "out of or in connection
with the health care rendered * * * by [the] hospi-
tal, its employees and [the] independent staff doc-
tors * * * who [had] agreed to arbitrate". I would
affirm.

I

Defendant entered this case as a consultant
when there arose a suspicion that Jacqualine Ku-
kowski might have tuberculosis. The doctor pre-
scribed ethambutol, an admittedly appropriate
drug per se for treatment of tuberculosis. It was
administered by defendant in St. Mary's Hospital
and was continued on an outpatient basis at Kent
Community Hospital. Plaintiffs brought suit
against defendant alleging negligence and mal-
practice in the failure to warn of or examine for
the known adverse effects of the drug. Plaintiffs
alleged in their complaint filed in the Kent Circuit
Court that Jacqualine Kukowski lost her vision as
a result of defendant's negligence. They also sub-
mitted the matter for arbitration.

The matter comes to the Supreme Court as an
interlocutory appeal, so neither the facts nor the
trial procedure concerning the alleged injury is
before us.

The core question is whether Jacqualine Kukow-
ski is bound to arbitrate her claim against defen-
dant by certain agreements which she signed upon
admission to each of the hospitals. Plaintiffs claim
that the agreements bound Mrs. Kukowski to arbi-
trate disputes only with the hospitals which sub-
mitted the forms to her, and that a separate
agreement would have been necessary to bind her

with respect to defendant. Defendant contends that his agreements with the hospitals to arbitrate disputes arising out of inpatient or outpatient health care in the hospitals (more fully set forth below) and Jacqualine Kukowski's agreements to arbitrate disputes with "independent staff doctors and consultants who have agreed to arbitrate" are binding upon her in this matter.

## II

The patient signed two agreements with Kent Community Hospital and one with St. Mary's Hospital. One agreement with Kent was a "Hospital Out-Patient Form". The others were "Hospital In-Patient, Out-Patient Surgery and Emergency Room Form[s]". All forms were approved by the Michigan Commissioner of Insurance. The agreements[1] were essentially the same and provided in pertinent part:

---

[1] The agreements provided:
"Arbitration Agreement

"Hospital In-Patient Surgery and
Emergency Room Form

"I understand that this hospital and I by signing this document agree to arbitrate any claims or disputes (except for disputes over charges for services rendered) which may arise in the future out of or in connection with the health care rendered to me during this hospital stay and/or emergency room visit by this hospital, its employees and those of its independent staff doctors and consultants who have agreed to arbitrate.

"I understand that Michigan law gives me the choice of trial by judge or jury or of arbitration. I understand that arbitration is a procedure by which a panel that is either mutually agreed upon or appointed decides the dispute rather than a judge or jury. I freely choose arbitration, and I agree that a judgment of any circuit court may be rendered upon any award or determination made pursuant to this agreement. I also understand that any arbitration will be conducted in accordance with Michigan law and the Michigan medical arbitration rules, as approved by the Commissioner of Insurance.

"I understand that this agreement to arbitrate is binding on me and all my agents, representatives and heirs and assigns, as well as

"I understand that this hospital and I by signing this document agree to arbitrate any claims or disputes (except for disputes over charges for services rendered) which may arise in the future out of or in connection with the health care rendered to me during this hospital stay and/or emergency room visit by this hospital, its employees and those of its independent staff doctors and consultants who have agreed to arbitrate.

\* \* \*

"I understand that this agreement to arbitrate is binding on me and all my agents, representatives and heirs and assigns, as well as on this hospital, its employees and those of its independent staff doctors, and consultants who have agreed to arbitrate."

The defendant was an independent staff doctor who had agreed to arbitrate.[2]

on this hospital, its employees and those of its independent staff doctors, and consultants who have agreed to arbitrate.

"I certify that I have read this agreement or have had it read to me and that I fully understand its content and execute this agreement of my own free will. I have received a complete copy of the booklet which explains this agreement.

"This agreement to arbitrate is not a prerequisite to health care or treatment, and may be revoked within 60 days after discharge by notification in writing to:".

[2] The agreement with each hospital was identical and provided:
"Independent Health Care Provider and Hospital
Agreement to Arbitrate in a Hospital, Clinic,
Sanitarium or HMO Setting

"[Kent Community Hospital or St. Mary's Hospital], the hospital, and M. S. Piskin, M.D. the provider, a member of the independent hospital staff, agree to arbitrate health care disputes which may arise out of or in connection with health care rendered during the course of inpatient, outpatient, and/or emergency room care with patients who elect arbitration. Disputes over charges for services rendered are excluded from this agreement. In the event of any such arbitration the provider and hospital agree that the arbitrators shall determine disputes between them concerning their respective liability to the patient.

"The provider and the hospital enter this agreement to arbitrate claims or disputes with patients who agree to arbitrate in order to provide their patients and themselves with an alternate method to the court-jury system of resolving patients' claims or disputes.

"This agreement to arbitrate shall be effective for one year from

Plaintiffs emphasize the beginning of the first sentence of the agreement Jacqualine Kukowski signed: *"I understand that this hospital and I* by signing this document agree to arbitrate any claims". They argue that this language is clear and unambiguous in showing that the agreement is only between the hospital and Jacqualine Kukowski and that the defendant is not a party to the agreement.

The agreement, however, must be viewed in the context of the medical malpractice arbitration act of 1975, MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.* The act applies to:

"[T]he arbitration of a dispute, controversy, or issue arising out of or resulting from injury to, or the death of, a person caused by an error, omission, or negligence in the performance of professional services by a health care provider, hospital, or their agent". MCL 600.5040(1); MSA 27A.5040(1).

The definition of "health care provider"[3] includes defendant.

this date, and unless the provider specifically declines to continue to participate, in the manner prescribed below, this agreement shall be renewed automatically each year. The agreement shall apply to any claims or disputes which may arise out of, or in connection with, health care provided during the present year or during any renewal year. It is understood by the provider that if he/she chooses to withdraw, notification of withdrawal must be made in writing to the hospital at least 30 days prior to the annual renewal date.

"The hospital and the provider understand that this agreement to arbitrate with patients who elect to arbitrate is binding on them and all their agents, representatives, heirs and assigns, and that the patient's agreement to arbitrate is binding on him/her and all his/her agents, representatives, heirs and assigns. The hospital and the provider agree that a judgment of any circuit court may be rendered upon any award or determination for or against either or both of the parties made pursuant to this agreement.

"The provider understands that if he/she acts as an employee of a professional corporation or as an employee or member of a partnership, when providing health care that the professional corporation or partnership is bound by the agreement, and certifies that he/she has the authority to so bind the corporation or partnership."

[3] " 'Health care provider' means a person, partnership, or corpora-

The act describes two types of arbitration. The first is an agreement with a health care provider who is not the employee of a hospital:

> "A person who receives health care from a health care provider may, if offered, execute an agreement to arbitrate a dispute, controversy, or issue arising out of health care or treatment by a health care provider who is not an employee of a hospital." MCL 600.5041(1); MSA 27A.5041(1).

The second is an agreement with a hospital:

> "A person who receives health care in a hospital may execute an agreement to arbitrate a dispute, controversy, or issue arising out of health care or treatment rendered by the hospital." MCL 600.5042(1); MSA 27A.5042(1).

Plaintiffs contend that the hospital's arbitration agreement that Jacqualine Kukowski signed does not extend to a non-employee health care provider. The medical malpractice arbitration act clearly provides otherwise:

> "Notwithstanding the continuing existence of a health care provider-patient arbitration agreement *all surgical and medical procedures performed by a participating health care provider in a hospital shall be covered by the terms and conditions applicable to the agreement between the patient and the hospital.* Post-discharge treatment in the health care provider's office subsequent to discharge from such institution will be governed by the terms of any existing health care provider-patient arbitration agreement." MCL 600.5042(5); MSA 27A.5042(5). (Emphasis added.)

tion lawfully engaged in the practice of medicare, surgery, dentistry, podiatry, optometry, chiropractic, nursing, or a person dispensing drugs or medicines." MCL 600.5040(2)(b); MSA 27A.5040(2)(b).

This statute unambiguously states that the agreement between the hospital and patient extends to participating health care providers for the medical procedures which they perform in the hospital.

Plaintiffs assert two reasons why MCL 600.5042(5); MSA 27A.5042(5) is not controlling. First, they contend that the defendant's allegedly negligent conduct ought not be characterized as *"surgical and medical procedures"* within the meaning of MCL 600.5042(5); MSA 27A.5042(5). By the same reasoning, one could argue that when a physician is negligent or engages in malpractice the physician's activities are not "the performance of professional services". The argument, however, would render the entire act meaningless in light of its stated application:

"The provisions of this chapter shall be applicable to the arbitration of a dispute, controversy, or issue arising out of or resulting from injury to, or the death of, a person caused by an error, omission, or *negligence in the performance of professional services* by a health care provider".

"[S]urgical and medical procedures performed by a participating health care provider in a hospital", as that phrase is found in MCL 600.5042(5); MSA 27A.5042(5), plainly was intended to apply to allegedly negligent surgical or medical procedures.

Plaintiffs also seek to avoid the clear import of MCL 600.5042(5); MSA 27A.5042(5) by arguing that the arbitration agreement failed to communicate adequately the content of that subsection. They say that, absent a disclosure of the wording of that subsection, the statutory presumption of the validity of the agreement would not apply. This argument is premised on subsection (8) of MCL 600.5042; MSA 27A.5042, which provides:

"An agreement to arbitrate which *includes the provisions of this section* shall be presumed valid." Plaintiffs argue that the agreement did not inform the patient of the statutory provision in subsection (5) that "all surgical and medical procedures performed by a participating health care provider in a hospital shall be covered by the terms and conditions applicable to the agreement between the patient and the hospital".

The arbitration agreement, however, stated:

"I understand that this agreement to arbitrate is binding on me and all my agents, representatives and heirs and assigns, as well as on this hospital, its employees and *those of its independent staff doctors, and consultants who have agreed to arbitrate.*" (Emphasis added.)

This language plainly disclosed that the agreement to arbitrate the disputes arising from the health care rendered in the hospital was binding on the patient and her independent staff doctor. This provision adequately communicated the content of MCL 600.5042(5); MSA 27A.5042(5). Therefore, there is no merit to plaintiffs' arguments that the arbitration agreement signed by Jacqualine Kukowski does not cover her dispute with the defendant.

### III

Hospitals and health care providers are referred to in tandem throughout the act. It unfolds an all-inclusive plan to implement the public policy of speedy and flexible resolutions of disputes by voluntary submission to arbitration throughout the spectrum of the care and treatment of patients by health care providers and hospitals.

A scheme is provided for arbitration concerning care and treatment by physicians, both in their offices and in the hospital, of outpatients or inpatients. It also provides for care by the hospital, its employees, etc., alone.

A fair reading indicates that the sections and subsections are interrelated. The physician's agreement with the hospital to arbitrate covered the circumstances of this case. Section 5042 then became applicable and, accordingly, Jacqualine Kukowski, in unequivocal wording, agreed to arbitrate with the hospital and was informed that the agreement bound her and the independent staff members who had agreed to arbitrate. She was advised of her right to a jury or bench trial, and that she was under no obligation to sign the arbitration agreement and could revoke the agreement within 60 days.

Nevertheless, she did sign the agreement and did not revoke it as provided. To the contrary, she filed a demand for arbitration which, so far as we know, continues in progress. She has the forum of her choice in which to pursue her claim and cannot be said to be without adequate remedy.[4]

I would affirm.

FITZGERALD, C.J., and RYAN, J., concurred with COLEMAN, J.

KAVANAGH, J. Plaintiff-appellant Jacqualine Kukowski was treated in St. Mary's Hospital in July, 1976, for removal of a lesion. In September, 1976,

---

[4] Although plaintiffs, at the end of their brief, question the constitutionality of the medical malpractice arbitration act, the argument was not raised in the lower courts and was not raised in their application for leave to appeal. Accordingly, it is not before us.

it was suspected that she had tuberculosis, and she was readmitted to St. Mary's. Upon readmission, she executed an arbitration agreement with the hospital. She thereupon came under the care of Dr. Piskin who prescribed and administered to her a drug called "ethambutol". She was released from St. Mary's on September 28, 1976, and continued under Dr. Piskin's care as an outpatient at Kent Community Hospital, with which hospital she executed another arbitration agreement. Dr. Piskin had executed an "Independent Health Care Provider and Hospital Agreement to Arbitrate" with each of the hospitals.

Plaintiffs brought suit against defendant charging negligence and malpractice in his administration of the drug "ethambutol", claiming that it caused the total loss of Jacqualine Kukowski's vision.

Defendant moved to dismiss the suit, asserting that plaintiffs were obliged to arbitrate the claim under the agreement with the hospital.

The trial court denied defendant's motion.

The Court of Appeals reversed, holding that the agreement signed by Jacqualine Kukowski was an unambiguous undertaking to submit to arbitration any claim arising out of the health care provided during the course of her hospital stay.

The medical malpractice arbitration legislation, MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.,* provides for two types of arbitration agreements. Section 5041 provides for arbitration agreements between a "health care provider" (doctor, etc.) and patients.[1] Section 5042 provides for arbitration

---

[1] "Sec. 5041. (1) A person who receives health care from a health care provider may, if offered, execute an agreement to arbitrate a dispute, controversy, or issue arising out of health care or treatment by a health care provider who is not an employee of a hospital."

agreements between hospitals, etc., and patients.[2] Neither § 5041 or § 5042 expressly provides for a single agreement binding all three parties—the patient, hospital and health care provider.

Although the Legislature might have provided for such single agreement, it did not. Likewise, the parties might have effected that result through appropriate provisions, but no suggestion of agency or third party beneficiary intendment appears in their agreement form.

The agreements signed by Jacqualine Kukowski and St. Mary's and Kent Community Hospitals are of the type contemplated in § 5042.[3] Mrs. Kukowski and the hospitals were bound to arbitrate disputes arising out of health care or treatment rendered by the hospitals. No agreement of the type contemplated in § 5041 was executed in this case. Therefore, Mrs. Kukowski did not, in accordance with the statute, agree to arbitrate her claim against Dr. Piskin and she is not obligated to do so.

We have long recognized arbitration as a desira-

[2] "Sec. 5042. (1) A person who receives health care in a hospital may execute an agreement to arbitrate a dispute, controversy, or issue arising out of health care or treatment rendered by the hospital. A person receiving emergency health care or treatment may be offered the option to arbitrate but shall be offered the option after the emergency care or treatment is completed."

[3] The agreements provided in pertinent part:

"I understand that this hospital and I by signing this document agree to arbitrate any claims or disputes (except for disputes over charges for services rendered) which may arise in the future out of or in connection with the health care rendered to me during this hospital stay and/or emergency room visit by this hospital, its employees and those of its independent staff doctors and consultants who have agreed to arbitrate.

\* \* \*

"I understand that this agreement to arbitrate is binding on me and all my agents, representatives and heirs and assigns as well as on this hospital, its employees and those of its independent staff doctors, and consultants who have agreed to arbitrate."

ble method of dispute resolution and we are mindful of the importance of properly resolving the growing number of medical malpractice claims. The Legislature has not compelled arbitration absent agreement between the parties. Were it to do so, we would be concerned with the constitutionality of the effort. We may not, however, under the guise of construction of a contract, rule to effect such policy.

Because it was not necessary to decision, we have not considered the constitutionality of the medical malpractice arbitration act in this case.

Reversed.

WILLIAMS and LEVIN, JJ., concurred with KAVANAGH, J.

The late Justice BLAIR MOODY, JR., took no part in the decision of this case.