HARTE v SINAI HOSPITAL OF DETROIT

Docket No. 68595. Submitted December 5, 1984, at Detroit.—Decided
August 6, 1985.

Plaintiffs, Thomas M. Harte, individually and as next friend of
Patrick Harte, and Karen A. Harte, brought an action alleging
medical malpractice before and during the birth of Patrick
Harte against Sinai Hospital of Detroit, Firooz Banooni, M.D.
and Phillip S. Peven, M.D. The hospital had mailed arbitration
agreements to Karen Harte following her release from the
hospital relating to the care and treatment of herself and her
son Patrick. She signed and returned the agreements. A year
later plaintiffs attempted to revoke the arbitration agreements,
and subsequently brought this action in Wayne Circuit Court.
That court, Romas S. Gribbs, J., granted accelerated judgment
in favor of defendants, holding that the court lacked subject-
matter jurisdiction because of the binding arbitration agree-
ments. Plaintiffs appealed. *Held:*

1. The medical malpractice arbitration act is constitutional.
It does not deprive plaintiffs of the right to an impartial
decisionmaker.

2. Plaintiff Karen Harte knowingly and intentionally waived
her right to a jury trial by signing the agreements. Further-
more, she validly bound Patrick Harte to arbitration. Thomas
Harte is also bound by the arbitration agreements, as his
action is derivative.

3. The arbitration agreements were not ambiguous. They
clearly extended to the doctors, who had signed arbitration

REFERENCES FOR POINTS IN HEADNOTES

[1-5] Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 374, 376.
Arbitration of medical malpractice claims. 84 ALR3d 375.
[2] Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 329-339.
[3] Am Jur 2d, Physicians, Surgeons, and Other Healers § 313.
[4] Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 28, 62.
Am Jur 2d, Insurance § 1680 *et seq.*
See the annotation in the ALR3d/4th Quick Index under the topic
Malpractice.
[5] Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 326-328.

agreements with the hospital, and whether plaintiffs were aware of the doctors' agreements is immaterial.

4. The fact that the alleged malpractice occurred before Mrs. Harte signed the agreements does not invalidate the agreements. They clearly related to the treatment in connection with the birth of Patrick Harte.

5. There is no conflict between the 60-day period during which an arbitration agreement may be revoked and the two-year period of limitations on malpractice actions.

6. Plaintiffs failed to allege facts in support of their allegations that the hospital acted fraudulently to induce the plaintiffs to arbitrate.

Affirmed.

1. ARBITRATION — MEDICAL MALPRACTICE — DUE PROCESS.

The medical malpractice arbitration act does not unconstitutionally deprive patients of due process rights to an impartial decisionmaker (MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.).*

2. ARBITRATION — MEDICAL MALPRACTICE — PRESUMPTION OF VALIDITY.

An agreement to arbitrate pursuant to the medical malpractice arbitration act which complies with the statutory requirements of the act is presumed to be valid (MCL 600.5041[7], 600.5042[8]; MSA 27A.5041[7], 27A.5042[8]).

3. ARBITRATION — MEDICAL MALPRACTICE — PARENT AND CHILD. ·

A parent may bind a minor child to an arbitration agreement under the medical malpractice arbitration act (MCL 600.5046[2]; MSA 27A.5046[2]).

4. ARBITRATION — MEDICAL MALPRACTICE — HOSPITALS — HEALTH CARE PROVIDERS.

An arbitration agreement between a hospital and a patient extends to health care providers using the hospital's facilities who have agreed to arbitrate; whether the patient is aware of the provider's agreement to arbitrate is not material (MCL 600.5042[5]; MSA 27A.5042[5]).

5. ARBITRATION — MEDICAL MALPRACTICE — FRAUDULENT INDUCEMENT — PLEADING.

A plaintiff who seeks to avoid an agreement to arbitrate a medical malpractice claim on the ground that a hospital fraudulently induced the plaintiff to sign the arbitration agreement must allege misrepresentation or omission by the hospital or its employees with the intention of inducing the plaintiff to arbitrate in order to avoid a motion for an accelerated judgment.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Gerald C. Davis*), for plaintiffs.

*Kitch, Suhrheinrich, Saurbier & Drutchas, P.C.* (by *Stephen M. Kelley* and *Joseph T. Longo*), for Sinai Hospital of Detroit.

*Sullivan, Ward & Bone, P.C.* (by *Michelle A. Thomas*), for defendants Banooni and Peven.

Before: DANHOF, C.J., and T. M. BURNS and R. H. BELL,* JJ.

PER CURIAM. Plaintiffs Thomas and Karen Harte appeal as of right from a circuit court order of accelerated judgment on plaintiffs' action alleging malpractice in connection with the birth of their son. The circuit court granted defendants' motion on the ground that the court lacked subject-matter jurisdiction, GCR 1963, 116.1(2), because plaintiff Karen Harte had signed binding arbitration agreements for herself and her son Patrick Harte. Plaintiffs' appeal was held in abeyance pending the Supreme Court's decision in *Morris v Metriyakool,* 418 Mich 423; 344 NW2d 736 (1984).

On May 2, 1980, Karen Harte gave birth to Patrick Harte at defendant Sinai Hospital. The mother's physicians during pregnancy were defendant Firooz Banooni, M.D., and defendant Phillip S. Peven, M.D. At the time of birth, Karen Harte was attended by Dr. Banooni. On May 5, 1980, Patrick and Karen Harte were discharged from Sinai Hospital.

Plaintiffs allege that, because of the large size of the infant, vaginal delivery was improper and caused injuries to the baby including shoulder dystocia and neurological difficulties. Plaintiffs

---

* Circuit judge, sitting on the Court of Appeals by assignment.

contend that the doctors and the hospital were negligent in failing timely to administer ultrasound and x-ray pelvimetry and properly diagnose the potential for birth of a large infant, and negligent in failing to take adequate precautions to prevent the infant from being injured during delivery.

After her discharge, Sinai Hospital mailed Karen Harte two arbitration agreements and a patient information booklet describing the arbitration agreements and arbitration procedure. One agreement related to the care and treatment of Karen Harte and the other agreement related to the care and treatment received by the minor child, Patrick. Karen Harte signed the agreements on behalf of herself and Patrick on May 8, 1980. Before signing the agreements, Karen Harte read the agreements as well as the accompanying information documents. Additionally, she consulted with her husband and with her brother, an attorney. After the 60-day cancellation period had expired, in May 1981, plaintiffs attempted to revoke the arbitration agreements.

The agreements executed by Karen Harte obliged her and Patrick to arbitrate any claims or disputes, "[w]hich may arise in the future out of or in connection with the health care rendered * * * by [the] hospital, its employees and those of its independent staff doctors * * * who have agreed to arbitrate". Defendants Banooni and Peven, independent physicians with staff privileges at Sinai Hospital, had signed agreements with Sinai Hospital to arbitrate all disputes relating to the treatment they rendered at the hospital.

On appeal, plaintiffs argue that the medical malpractice arbitration act (MMAA), MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.,* is unconstitutional due to the mandatory inclusion of a

physician or hospital administrator on the arbitration panel. This is the issue addressed by the Supreme Court in *Morris v Metriyakool, supra.* In *Morris,* three Justices found that the MMAA does not deprive plaintiffs of due process rights to an impartial decisionmaker and two Justices found no due process violation since the composition of the arbitration panel does not involve state action. Here, plaintiffs argue that *Morris* is not binding on this Court because there is no clear majority. We decline to address plaintiffs' argument and hold that to the extent that *Morris* is not binding it is persuasive.

Plaintiffs next argue that Karen Harte did not knowingly, voluntarily, and intelligently waive her and her son's constitutional rights to court access and a jury trial. In *Morris,* Justice T. G. KAV-ANAGH, joined by Justice LEVIN, addressed this issue and found that a plaintiff bears the burden of persuasion in showing an invalid waiver. *Morris, supra,* pp 437-440. The opinions in *Morris* are, however, not dispositive on this issue. See *Aluia v Harrison Community Hospital (On Remand),* 139 Mich App 742, 746; 362 NW2d 783 (1984), for a discussion of the various opinions in *Morris* on this issue.

The question is whether plaintiff Karen Harte intentionally waived her right to a jury trial. *Aluia v Harrison, supra,* p 747. Here, the arbitration agreement and information booklet clearly indicated that arbitration is an alternative to trial by jury. Plaintiffs have not alleged any noncompliance with the statutory requirements and, therefore, the agreements to arbitrate are presumed valid. MCL 600.5041(7); MSA 27A.5041(7), MCL 600.5042(8); MSA 27A.5042(8). Karen Harte read the agreements and the booklet, consulted her brother, an attorney, about its contents and signed

the agreements. This is not a case where there is a factual issue concerning the plaintiff's understanding of the contents of the agreements. Compare *Aluia, supra*. Consequently, we cannot conclude that the trial court erred in granting defendants' motion on this ground. We also reject plaintiffs' argument that the agreement signed on behalf of Patrick Harte was invalid. The MMAA clearly allows a parent to bind a child to an arbitration agreement. MCL 600.5046(2); MSA 27A.5046(2). *Benson v Granowicz*, 140 Mich App 167, 169; 363 NW2d 283 (1984). Likewise, plaintiff Thomas Harte's action is derivative and, thus, he is bound by the arbitration agreement. *Ballard v Southwest Detroit Hospital*, 119 Mich App 814, 818-819; 327 NW2d 370 (1982).

Plaintiffs raise several arguments concerning the scope of the arbitration agreements. We note the strong public policy in favor of arbitration and that questions concerning the arbitrability of issues are resolved in favor of arbitration. *Ewald v Pontiac General Hospital*, 121 Mich App 793, 797; 329 NW2d 495 (1982); *Miller v Swanson*, 95 Mich App 36, 40; 289 NW2d 875 (1980).

Plaintiffs first assert that they are under no duty to arbitrate with defendants Banooni and Peven because the provision in the arbitration agreements covering independent staff physicians who have "agreed to arbitrate" is illusory in that no notice is given to the patient as to which doctors have agreed to arbitrate. This is not a question of an illusory contract but rather whether the agreements unambiguously include the independent staff physicians. The MMAA provides that an arbitration agreement between a hospital and patient extends to health care providers. MCL 600.5042(5); MSA 27A.5042(5). See *Kukowski v Piskin*, 415 Mich 31; 327 NW2d 832

(1982) (opinion of COLEMAN, J.). Here, the arbitration agreements are not ambiguous. Plaintiff Karen Harte agreed to arbitrate claims arising out of the health care rendered to plaintiff and her son during the course of her treatment at the hospital by independent staff doctors. The fact that plaintiff was unaware of the doctors' agreements to arbitrate is not material. See *Kukowski v Piskin,* 99 Mich App 1, 4; 297 NW2d 612 (1980), *aff'd* 415 Mich 31; 327 NW2d 832 (1982).

Plaintiffs next argue that alleged malpractice occurring before the agreements were signed is not covered by the arbitration agreements. We disagree. The agreements state that plaintiffs agree to arbitrate claims "[w]hich may arise in the future out of or in connection with the health care rendered to me during this *hospital stay* * * * by this hospital * * * and those of its independent staff doctors * * *". (Emphasis added.) The language of the agreements refers to "this hospital stay". For this reason, the present case is distinguishable from *Brown v Considine,* 108 Mich App 504; 310 NW2d 441 (1981). Since Karen Harte only went to the hospital once, and testified that she understood that the agreements related back to the hospital stay, and since liberal construction is appropriate, the arbitration agreements apply to malpractice in connection with plaintiff's son's birth. Similarly, plaintiffs' claims which arise out of prenatal care should also be included in the arbitration proceeding. They are inextricable from the arbitrable claims because they involve the same damages.

Plaintiffs argue that there is a conflict between the statutorily prescribed 60-day revocation period and the malpractice statute of limitations. Plaintiffs' argument is not based on a constitutional violation or any actual statutory conflict, but

rather on plaintiffs' perception that the periods are "grossly disproportionate". We find no actual conflict between the statutes and, thus, see no legal rationale upon which to invalidate the statutory revocation period.

Plaintiffs also seek to avoid the arbitration agreements by arguing that the hospital acted fraudulently in sending Karen Harte the agreements three days after her discharge from the facility. Plaintiffs argue that the hospital did not inform plaintiffs of the malpractice that had taken place during her child's delivery, even though the hospital had full knowledge of the events. Plaintiffs have not alleged any misrepresentation or omission which was made by the hospital or its employees with the intention of inducing plaintiffs to agree to arbitrate. See *Horn v Cooke,* 118 Mich App 740, 745-746; 325 NW2d 558 (1982). Plaintiffs have not alleged facts to support a finding that the agreements may be set aside as having been fraudulently induced. *Benson v Granowicz, supra,* pp 169-170. Consequently, the circuit court order of accelerated judgment is affirmed.

Affirmed.