HAWKER v NORTHERN MICHIGAN HOSPITAL, INC

Docket No. 90779. Submitted June 2, 1987, at Grand Rapids. Decided November 3, 1987.

Thomas Hawker, as personal representative of the estate of Patricia Hawker, deceased, brought an action in Emmet Circuit Court alleging medical malpractice by Northern Michigan Hospital, Inc., Burns Clinic Medical Center and Dr. Dixon Gerber in the care and treatment of the decedent. A separate medical malpractice action involving the decedent's treatment brought by plaintiff against Dr. James M. Shirilla was consolidated for trial with the case involving the other defendants. The trial court, Richard M. Pajtas, J., granted summary disposition in favor of defendants, ruling that the trial court lacked jurisdiction over plaintiff's action in view of a valid malpractice arbitration agreement executed by the decedent. Plaintiff appealed.

The Court of Appeals *held:*

1. By failing to raise it at the trial court level, plaintiff has waived appellate review of his claim that no evidence was presented indicating that defendants Dr. Shirilla and Burns Clinic Medical Center had agreed to arbitration.

2. The trial court did not err in finding that the arbitration agreement was not revoked in a timely manner.

3. The trial court correctly found that defendants had met their burden of establishing that the arbitration agreement conformed with the strict requirements of the malpractice arbitration act.

4. The trial court properly ruled that the arbitration agreement was not rendered unenforceable by the absence from the

REFERENCES

Am Jur 2d, Appeal and Error § 839.

Am Jur 2d, Arbitration and Award §§ 11-19, 36-49, 83.

Am Jur 2d, Contracts §§ 69, 77.

Application of "clearly erroneous" test of Rule 52(a) of Federal Rules of Civil Procedure to trial court's findings of fact based on documentary evidence. 11 ALR Fed 212.

Arbitration of medical malpractice claims. 84 ALR3d 375.

Applicability of parol evidence rule in favor of or against one not a party to contract of release. 13 ALR3d 313.

document itself· of a date indicating when· the agreement was executed. Parol evidence established that. the agreement was signed by the decedent and a hospital employee on the day of the decedent's admission.

Affirmed.

1. APPEAL — FINDINGS OF FACT — BENCH TRIAL.

A finding of fact by a court sitting in a bench trial is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed (MCR 2.613[C]).

2. ARBITRATION — MALPRACTICE ARBITRATION ACT — REVOCATION.

A malpractice arbitration agreement between a hospital and a person who receives health care or treatment at the hospital may be revoked by the treated person or his legal representative, but not by the hospital, within sixty days after discharge from the hospital by notifying the ·hospital in writing (MCL 600.5042[3]; MSA 27A.5042[3]).

3. ARBITRATION — MALPRACTICE ARBITRATION ACT — BURDEN. OF PROOF — PRESUMPTION OF VALIDITY.

The burden of establishing the existence of an arbitration agreement that conforms to the strict requirements of the malpractice arbitration act rests with the party seeking to enforce the agreement; once prima facie evidence of such an agreement has been presented, the statutory presumption of validity accrues, and the burden of going forward with evidence to rebut the presumption then shifts to the party seeking to avoid the agreement (MCL 600.5041 *et seq.*; MSA 27A.5041 *et seq.*).

4. CONTRACTS — PAROL EVIDENCE — DATE.

An otherwise enforceable agreement is not rendered unenforceable due to the absence of a date set forth on the face of the document; instead, the date may be established through parol evidence; the question of when parties become contractually bound depends upon their intention as manifested by their verbal statements and conduct in light of all the circumstances.

*Jerry L. Sumpter, P.C.* (by *James D. Henke*), for plaintiff.

*Menmuir, Zimmerman, Rollert & Kuhn* (by *Philip E. Rodgers, Jr.*), for defendant Northern Michigan Hospital, Inc.

*Miller, Canfield, Paddock & Stone* (by *Leland D. Barringer* and *Gary W. Faria*), for defendants Burns Clinic Medical Center, Dixon Gerber and James M. Shirilla.

Before: BEASLEY, P.J., and R. M. MAHER and M. E. DODGE,* JJ.

BEASLEY, P.J. Plaintiff, Thomas Hawker, personal representative of the estate of Patricia Hawker, deceased, appeals as of right from an order granting summary disposition in favor of defendants, Northern Michigan Hospital, Inc., Burns Clinic Medical Center, Dr. Dixon Gerber and James M. Shirilla, M.D.

On April 12, 1983, Patricia Hawker went into defendant hospital for elective surgery, which was performed the next day. On April 14, 1983, she suffered a seizure, her condition deteriorated and she died on April 28, 1983. On February 28, 1984, the Emmet County Probate Court issued letters of authority to plaintiff and, on June 20, 1984, he started a medical malpractice action in Emmet Circuit Court against defendants Northern Michigan Hospital, Inc. (NMH), Burns Clinic Medical Center, and Dr. Dixon Gerber. On April 19, 1985, plaintiff started a separate medical malpractice suit against defendant James M. Shirilla, M.D., which was subsequently consolidated with the within case.

Motions for summary disposition were filed on behalf of defendants. After a full evidentiary hearing, the trial court decided that because there was a valid arbitration agreement the court lacked jurisdiction to hear plaintiff's malpractice case and, therefore, the motions for summary disposition were granted.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

On appeal, plaintiff raises four issues, none of which require reversal. First, plaintiff claims that the trial court erred in dismissing the case against defendants Dr. Shirilla and Burns Clinic Medical Center for want of subject-matter jurisdiction because defendants did not present any evidence at the evidentiary hearing that these two defendants agreed to arbitration. Plaintiff failed to raise this question in the trial court. Consequently, under *Szidik v Podsiadlo,*[1] this issue falls because it was not preserved for appellate review and manifest injustice does not result from substituting arbitration for a jury trial. Furthermore, we note that defendant Shirilla has attached to his appellate brief an agreement to arbitrate between himself and defendant Northern Michigan Hospital, which appears to establish participating health care status. Among other things, the agreement provides:

> Northern Michigan Hospitals, Inc., the Hospital and James Shirilla, M.D., the Provider, a member of the Independent Hospital Staff, agree to arbitrate health care disputes which may arise out of or in connection with health care rendered during the course of inpatient, outpatient and/or emergency room care with patients who elect arbitration. . . .
> The Provider and the Hospital enter this agreement to arbitrate claims or disputes with patients who agree to arbitrate in order to provide their patients and themselves with an alternate method to the court-jury system of resolving patients' claims or disputes. . . .
> The Hospital and the Provider understand that this agreement to arbitrate with patients who elect to arbitrate is binding on them and all their agents, representatives, heirs and assigns, and that the patient's agreement to arbitrate is binding on him/her and all his/her agents, representatives,

---

[1] 109 Mich App 446, 451; 311 NW2d 386 (1981).

heirs and assigns. The Hospital and the Provider agree that a judgment of any circuit court may be rendered upon any award or determination for or against either or both of the parties made pursuant to this agreement.

The Provider understands that if he/she acts as an employee of a Professional Corporation or as an employee or member of a partnership when providing health care that the Professional Corporation or partnership is bound by the agreement, and certifies that he/she has the authority to so bind the Corporation or partnership.

While we do not normally permit a record to be enlarged upon appeal, we are inclined, under the circumstances of this case, to believe that the agreement to arbitrate between Dr. Shirilla, Burns Clinic Medical Center, P.C., and Northern Michigan Hospital is an additional reason to conclude plaintiff has not preserved this issue for appeal. As a matter of fact, referring to a similar agreement between Dr. Gerber and the hospital, plaintiff said: "The exhibits attached to the motion show that Dr. Gerber agreed to arbitrate and that Burns Clinic agreed to arbitrate for Dr. Gerber's malpractice." We do not require performance of useless acts. To remand for an evidentiary hearing on this issue would, in view of the written agreement to which we have referred, seem to be a useless waste of judicial time.

Second, plaintiff claims that the trial court erred in finding that the arbitration agreement signed by his decedent was not revoked in a timely manner. In this connection, the trial court ruled as follows:

*The Court:* All right. As to the issue of whether or not the arbitration agreement was terminated timely, it is clear that the letter to Mr. Raney, the hospital administrator, from Mr. Sumpter, the

attorney for the Estate, was dated May 23rd, 1984, which revoked the arbitration agreement.

In my opinion I don't think there is too much issue as to whether or not the sixty-day period to terminate commences to run on the date of death. I don't believe that it does or should.

The other two commencement dates would be the appointment of the administrator for the estate, or the personal representative, in which event the period to terminate would have expired on April 28th, 1984, approximately a month before the actual revocation letter. Or the third alternative date to commence the termination sixty-day period, which is when the arbitration agreement should have been discovered. Frankly, this Court would favor the appointment of the personal representative of the estate as the date that the sixty-day termination period commences to run.

Even if, however, the period commenced to run at the time that the arbitration agreement should have been discovered, I note that the file includes correspondence from Mr. Sumpter to Northern Michigan Hospitals dated September 27th, 1983, requesting medical records. Again on October 5th, 1983, and again on January 23rd, 1984, correspondence from Mr. Sumpter directed to Dr. Dixon Gerber indicating that Mr. Sumpter's office had been retained to represent the estate, claiming that there is a cause of action and asking that the matter be referred to the curia, that being some four months ahead of the revocation letter from Mr. Sumpter dated May 23rd, 1984.

So if the period would commence to run upon the time the discovery of the arbitration agreement should have been discovered, this Court would conclude that the period had expired as well at the time that the revocation letter was sent.

So in conclusion as to that issue, it is my finding and conclusion that the arbitration agreement was not timely terminated.

Under MCR 2.613(C), we do not set aside the findings of fact of a trial judge sitting without a

jury unless such findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed.[2]

MCL 600.5042(3); MSA 27A.5042(3) provides:

> The agreement to arbitrate shall provide that the person receiving health care or treatment or his legal representative, but not the hospital, may revoke the agreement within 60 days after discharge from the hospital by notifying the hospital in writing.

In general, we have set the two standards by which to measure the running of the sixty-day "statute of limitations" referred to by the trial judge, namely, the "disability" provision standard[3] and the "discovery" provision standard.[4] We do not believe the ruling of the trial judge was clearly erroneous.

Third, plaintiff claims that the trial court erred in finding that defendants met their burden of proof to show that the arbitration agreement was entered into knowingly, voluntarily and intelligently. In *McKinstry v Valley Obstetrics-Gynecology Clinic*,[5] the Supreme Court resolved the conflict regarding who must bear the burden of proof in establishing the validity of an arbitration agreement signed pursuant to the medical malpractice arbitration act.[6] Taking note that, in enacting the malpractice arbitration statute, the Legislature had taken pains to declare that an arbitration

---

[2] *Tuttle v Dep't of State Highways*, 397 Mich 44, 46; 243 NW2d 244 (1976).

[3] MCL 600.5851; MSA 27A.5851.

[4] MCL 600.5838(2); MSA 27A.5838(2).

[5] 428 Mich 167; 405 NW2d 88 (1987).

[6] MCL 600.5041 *et seq.*; MSA 27A.5041 *et seq.*

agreement which conformed to the statute's requirements "shall be presumed valid," the Court held that the burden of establishing the existence of an arbitration agreement that conformed to the strict requirements of the statute rested upon the party seeking to enforce the agreement. The Supreme Court proceeded to say that once prima facie evidence of such an agreement was presented, a statutory presumption of validity applied and the burden of going forward with evidence to rebut the presumption then shifted to the party seeking to avoid the agreement.

In the within case, the trial judge, correctly anticipating the Supreme Court result, placed the burden of proof on defendants to show strict compliance with the statute. Once defendants established a prima facie case of compliance, the trial judge shifted the burden to plaintiff to introduce evidence that would counteract the prima facie case. The trial judge here specifically refused to follow *Moore v Fragatos*,[7] thus correctly anticipating the holding of *McKinstry, supra*. There was no misapplication of the burden of proof here. Furthermore, we believe defendants carried their burden of proof. Review of the arbitration agreement reveals that it was signed by plaintiff's decedent, that it contains a provision informing the signatory of a sixty-day revocation period and that it contains the statutorily required language concerning the sixty-day revocation period, and that signing the agreement is not a prerequisite to receiving medical treatment.

At an evidentiary hearing held on January 22, 1986, Sally Matchinski, an admissions clerk for NMH from October 1981 through October 1984, testified that it was her employer's standard proce-

[7] 116 Mich App 179; 321 NW2d 781 (1982).

dure to offer every patient admitted to its facilities an arbitration agreement. She also testified that she never signed an arbitration agreement when the patient had not signed the agreement in front of her. She further testified that the agreement is given to the patient and signed by the patient at the same time that the consent form is given to the patient and signed, and that it was never done otherwise for patients receiving elective surgery. At the time the patient signed the arbitration agreement, she was supplied with an information booklet detailing the provisions of the agreement.

When specifically questioned concerning the admission of plaintiff's decedent, Ms. Matchinski testified that she had an independent memory of her. This memory was triggered by the fact that both she and plaintiff's decedent were from St. Ignace and, therefore, "UP-ers." They had discussed the Upper Peninsula, St. Ignace and mutual acquaintances at the time of plaintiff's decedent's admission. She described decedent as a small woman with light brown hair and said she was nice looking, in a wheel-chair and had very arthritic hands and feet. Ms. Matchinski identified her own signature on the undated arbitration agreement and testified that she remembered observing plaintiff's decedent sign the document on the date of her admission, which was April 12, 1983, but did not remember the specific date. However, during her testimony, a time card was introduced in evidence showing that she had worked on April 12, 1983, from 8:57 A.M. to 5:35 P.M. In light of this testimony and of the Supreme Court decision in *McKinstry*, we are satisfied that defendants carried their burden of proof.

Plaintiff also claims that the arbitration agreement is invalid because it is not dated. Like his

attack on the credibility of the admissions clerk, this claim is without merit. Under general contract principles, an otherwise enforceable agreement is not rendered unenforceable due to the absence of a date set forth on the face of the document. Instead, the date may be established through parol evidence. The question of when parties become contractually bound depends upon their intention as manifested by their verbal statements and conduct in light of all of the circumstances.[8]

In the within case, the trial judge found that the absence of the date on the agreement did not prevent him from finding that the document had been executed. He also found that the agreement was signed by plaintiff's decedent on April 12, 1983, at the time of her admission. On a review of the record, we do not believe that these findings were clearly erroneous.

Affirmed.

---

[8] *Lake States Engineering Corp v Lawrence Seaway Corp*, 15 Mich App 637, 642; 167 NW2d 320 (1969), lv den 383 Mich 763 (1970).