HAYWOOD v FOWLER

Docket No. 127015. Submitted June 4, 1991, at Lansing. Decided July
9, 1991, at 9:20 A.M. Leave to appeal sought.

Jane A. and Raymond W. Haywood brought a medical malprac-
tice action in the Hillsdale Circuit Court against Larry J.
Fowler, M.D. The court, Harvey W. Moes, J., granted the
defendant's motion for summary disposition, noting Raymond
Haywood's execution of an arbitration agreement. The plain-
tiffs appealed.

The Court of Appeals *held:*

1. The arbitration agreement strictly complied with the
requirement of the Malpractice Arbitration Act that a certain
provision be printed in 12-point boldface type, MCL 600.5042(4);
MSA 27A.5042(4), even though it was allegedly printed in 9-
point type. The provision was printed in all capital letters, in
boldface type much larger than the other type on the page, and
was very noticeable. The manner in which the provision was
printed fulfills the legislative purpose behind the statutory
requirement of assuring that persons reading the provision
would notice the important message it contained. Summary
disposition of the claim of malpractice covered by the agree-
ment was proper.

2. The court erred in granting summary disposition of the
claim regarding alleged malpractice which occurred during
Raymond Haywood's second hospital admission, for which no
arbitration agreement was signed. The agreement signed at the
time of his first hospital admission clearly and unambiguously
applied only to claims arising out of care during that period of
hospitalization.

Affirmed in part, reversed in part, and remanded.

1. STATUTES — STRICT COMPLIANCE.

The term "strict compliance" when used in the context of strict
compliance with a statute should be interpreted similarly to

REFERENCES

Am Jur 2d, Physicians, Surgeons, and Other Healers § 376; Statutes
§§ 271, 274-276
Arbitration of medical malpractice claims. 84 ALR3d 375.

the term "strict construction" as that term is used in the context of strict construction of a statute; the terms do not mean that a strained construction adverse to legislative intent should be employed, rather it is the spirit and purpose of a statute that is to prevail over the strict letter of the statute.

2. ARBITRATION — MEDICAL MALPRACTICE — ARBITRATION AGREE-
MENTS.

An agreement to arbitrate claims of malpractice signed at the time of admission to a hospital and which states that it applied only to claims of malpractice that arise during that period of hospitalization cannot be invoked to require arbitration of claims of malpractice which arise during a subsequent period of hospitalization, even where the subsequent hospitalization begins the day after the individual involved was discharged from the hospital and is treated for the same ailments (MCL 600.5042[6]; MSA 27A.5042[6]).

*James D. Hayne,* for the plaintiffs.

*Foster, Swift, Collins & Smith, P.C.* (by *David H. Aldrich* and *Lynn K. Richardson*), for the defendant.

Before: CAVANAGH, P.J., and HOLBROOK, JR., and W. P. CYNAR,* JJ.

PER CURIAM. In this medical malpractice case involving an arbitration agreement, plaintiffs claim that the trial court erred in granting summary disposition in favor of defendant. We affirm in part, reverse in part, and remand.

Plaintiff Raymond Haywood[1] claims that he was provided negligent treatment by defendant when he was admitted to Hillsdale Community Health

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[1] His wife, Jane A. Haywood, brings a derivative claim. Hereafter, plaintiff will refer to Raymond Haywood.

Center[2] on September 15, 1985, suffering from pain in his right leg and left shoulder. On that date, plaintiff signed an arbitration agreement in which he agreed to arbitrate any claim regarding his hospital care. He was discharged from the hospital on September 21, 1985, but was readmitted on the evening of September 22, 1985, and, subsequently, underwent multiple transfusions and surgeries. He did not sign a second arbitration agreement upon his September 22, 1985, admission.

In response to plaintiff's complaint in this matter, defendant moved for summary disposition pursuant to MCR 2.116(C)(4), (7), arguing that the trial court lacked subject-matter jurisdiction over the matter because the parties had agreed to arbitration, or, in the alternative, that the claim was barred by plaintiff's execution of an arbitration agreement. The trial court granted summary disposition without specifying under which subrule. Plaintiffs appeal.[3]

We note that MCR 2.116(C)(4) does not provide a proper basis for summary disposition in a medical malpractice controversy governed by an arbitration agreement, *Campbell v St John Hosp,* 434 Mich 608, 613-615; 455 NW2d 695 (1990), and thus we will treat these claims as having been brought under MCR 2.116(C)(7). When reviewing a motion brought under this subrule, we must consider all affidavits, pleadings, and other documentary evidence filed or submitted by the parties. MCR

[2] Hillsdale Community Health Center was initially a party defendant in this case, but was dismissed on the ground of governmental immunity.

[3] Plaintiffs previously appealed the grant of summary disposition on three grounds. This Court reversed with regard to one ground and remanded for an evidentiary hearing without addressing the other issues. *Haywood v Fowler,* unpublished opinion per curiam of the Court of Appeals, decided April 19, 1989 (Docket No. 107524). Following the evidentiary hearing and the trial court's adverse ruling on that issue, plaintiffs now appeal on the basis of the other two grounds.

2.116(G)(5); *Eichhorn v Lamphere School Dist,* 166 Mich App 527, 536; 421 NW2d 230 (1988). We must consider all well-pleaded allegations as true and construe them most favorably to plaintiff. *Male v Mayotte, Crouse & D'Haene Architects, Inc,* 163 Mich App 165, 168; 413 NW2d 698 (1987).

Plaintiff claims that the trial court erred in granting summary disposition because a specified sentence in the arbitration agreement was not in 12-point type, as required by statute, and thus the agreement was invalid.

MCL 600.5042(4); MSA 27A.5042(4) of the Malpractice Arbitration Act (MAA), MCL 600.5040 *et seq.*; MSA 27A.5040 *et seq.*, provides:

> The agreement shall contain the following provision in 12-point boldface type immediately above the space for signature of the parties: "This agreement to arbitrate is *not* a prerequisite to health care or treatment and may be revoked within 60 days after discharge by notification in writing."

Plaintiff submitted an affidavit from an alleged printing expert who measured the type of the specified sentence in the arbitration agreement in this case and determined that it was only in 9-point type. The difference is approximately ¹⁄₂₄ of an inch.

An arbitration agreement under the MAA cannot be legally valid or binding unless it is in strict compliance with the arbitration statute. *McKain v Moore,* 172 Mich App 243, 248; 431 NW2d 470 (1988); *Brintley v Hutzel Hosp,* 181 Mich App 566, 568; 450 NW2d 79 (1989). Thus, we must determine how the term "strict compliance" should be interpreted. When interpreting the analogous term of "strict construction" of a statute, the Supreme Court has stated that it does not mean a strained

construction adverse to legislative intent. *Ann Arbor v University Cellar, Inc,* 401 Mich 279, 288-289; 258 NW2d 1 (1977), modified on other grounds 402 Mich 957 (1978). The spirit and purpose of a statute prevails over the strict letter of a statute. *Kempf v Michigan Bell Telephone Co,* 137 Mich App 574, 581; 358 NW2d 378 (1984).

> [T]he rule of "strict construction" has no definite or precise meaning. It has only relative application. It is not the opposite of liberal construction, and it does not require such a strained or narrow interpretation of the language as to defeat the object. The primary purpose of all statutory construction is to determine the intent of the Legislature; and all such rules are but vassals to the liege sovereign intent. [*Southwestern Bell Telephone Co v Newingham,* 386 SW2d 663, 665-666 (Mo App, 1965).]

We find that the term "strict compliance," when used in the context of strict compliance with a statute, should be similarly interpreted.

We believe that the intent of the Legislature in requiring the statement in question to be in boldface type and larger letters was to assure that persons reading the agreement would notice the important message it contained. A review of the arbitration agreement in this case shows that this statement is much larger than the other type on the page, is in boldface type, and is in all capital letters. It is very noticeable. Thus, we find that the instant arbitration agreement fulfills the legislative purpose behind the statutory requirement, and is thus in strict compliance with the statute. If we were to find otherwise and carry absolute strict compliance to its extreme, a type much larger than 12-point type would not "strictly" comply with the statute, even though it would, presum-

ably, be more noticeable. This would lead to an absurd result.

Defendant has met his burden of proof of showing that he strictly complied with the MAA with regard to this issue. *Brintley, supra.* Consequently, summary disposition of plaintiff's claim of malpractice covered by this agreement was properly granted. MCR 2.116(C)(7).

Plaintiff also claims that the trial court erred in granting summary disposition of his claim that malpractice continued or occurred during his hospitalization which began on September 22, 1985, because the arbitration agreement signed for the hospitalization which began on September 15, did not cover the second hospitalization. We agree.

MCL 600.5042(6); MSA 27A.5042(6) provides:

> Each admission to a hospital shall be treated as separate and distinct for the purposes of an agreement to arbitrate . . . .

The first paragraph of the arbitration agreement in the present case contains the following language:

> By signing this agreement I am choosing arbitration rather than going to court as a way of resolving any future claim about my hospital care. This agreement applies to my care during THIS hospital stay and/or emergency room visit and includes the hospital, its employees and its independent staff doctors and consultants who have also agreed to arbitrate.

Where the language of a contract is clear and unambiguous, the intent of the parties will be ascertained according to its plain sense and meaning. *McKain, supra.* Here, the agreement, particu-

larly by capitalizing and printing in boldface type the word "THIS," limits the applicability of an agreement to the existing hospital admission. Accord *McKain, supra,* p 255. This interpretation is consistent with the statute. Defendant's contention that plaintiff left his first hospital stay against medical advice does not change the fact that the second hospitalization was a separate admission and the September 15, 1985, arbitration agreement is not binding on plaintiff for the September 22, 1985, hospitalization.

Accordingly, we find that summary disposition of any claim plaintiff may have regarding malpractice during his second hospitalization was improper.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.