GRAZIA v SANCHEZ

Docket No. 139797. Submitted April 20, 1993, at Detroit. Decided May 4, 1993, at 9:25 A.M.

Patricia and Lawrence Grazia brought an action in the Oakland Circuit Court against Vidal Sanchez, M.D.; Bohdan N. Zarewych, D.O.; Crittenton Hospital; and the physicians' respective professional corporations, alleging medical malpractice related to a laparotomy performed on Patricia Grazia. The court, Robert L. Templin, J., granted summary disposition for the defendants, ruling that the action was barred by an agreement to arbitrate signed by Patricia before preoperative testing at the hospital. The plaintiffs appealed.

The Court of Appeals *held:*

The burden of establishing the existence of an arbitration agreement that conforms to the strict requirements of the Malpractice Arbitration Act, MCL 600.5040 *et seq.*; MSA 27A.5040 *et seq.*, rests with the party seeking to enforce the agreement. Once prima facie evidence of such an agreement has been presented, a statutory presumption of validity accrues, and the burden of going forward with evidence to rebut the presumption shifts to the party seeking to avoid the agreement.

In this case, the trial court did not clearly err in determining that a valid agreement to arbitrate existed and that the plaintiffs failed to rebut the presumption of validity. Viewing the parties' conduct in light of all the circumstances, the trial court properly rejected the plaintiffs' claim that the arbitration agreement related to preoperative testing only. It was clear that the agreement applied to both the preoperative testing and the laparotomy.

Affirmed.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Susanne Pryce*), for the plaintiff.

*Law Offices of Schwartz & Jalkanen* (by *Melvin R. Schwartz* and *Ralph C. Chapa, Jr.*), for Vidal Sanchez, M.D., and Vidal J. Sanchez, M.D., P.C.

*Mellon, McCarthy & Van Dusen, P.C.* (by *James T. Mellon* and *Margaret M. Porter*), for Bohdan N. Zarewych, D.O., Bohdan N. Zarewych, D.O., P.C., and Crittenton Hospital.

Before: HOLBROOK, JR., P.J. and SAWYER and CORRIGAN, JJ.

PER CURIAM. In this medical malpractice action, plaintiffs appeal the grant of summary disposition on the basis of the existence of an agreement to arbitrate. MCR 2.116(C)(7). We affirm.

Plaintiff Patricia Grazia (hereafter plaintiff) had an elective laparotomy on February 12, 1988. On February 9, 1988, plaintiff visited the hospital for preoperative tests. At the same time, she executed a surgical consent form ("Crittenton Hospital Consent to Operation and Treatment") and an "Arbitration Agreement." The agreement complied with the requirements of MCL 600.5040 *et seq.*; MSA 27A.5040 *et seq.*, the Malpractice Arbitration Act (MAA).

Plaintiff developed complications after surgery, allegedly because of the negligence of the various defendants. She brought suit in January 1990. Defendants moved for summary disposition, citing the February 9, 1988, arbitration agreement. The trial court granted the motion, and plaintiff appeals.

Plaintiff argues that the February 9 arbitration agreement applies only to the preoperative testing and other procedures performed on that day and does not include the surgery and hospitalization that began on February 12. We disagree.

The applicable standard of review under MCR 2.116(C)(7) requires us to accept all of plaintiff's well-pleaded allegations as true and to construe them most favorably to the plaintiff. *Beauregard-*

*Bezou v Pierce,* 194 Mich App 388, 390-391; 487 NW2d 792 (1992); *Bonner v Chicago Title Ins Co,* 194 Mich App 462, 469; 487 NW2d 807 (1992). The motion should not be granted unless no factual development could provide a basis for recovery. *Harrison v Director, Dep't of Corrections,* 194 Mich App 446, 449; 487 NW2d 799 (1992); MCR 2.116(C)(7); MCR 2.116(G)(5).

MCL 600.5042; MSA 27A.5042 provides:

(1) A person who receives health care in a hospital may execute an agreement to arbitrate a dispute, controversy, or issue arising out of health care or treatment rendered by the hospital. . . .

\* \* \*

(6) Each admission to a hospital shall be treated as separate and distinct for the purposes of an agreement to arbitrate but a person receiving outpatient care may execute an agreement with the hospital which provides for continuation of the agreement for a specific or continuing program of health care or treatment under the provisions of [MCL 600.5041; MSA 27A.5041].

\* \* \*

(8) An agreement to arbitrate which includes the provisions of this section shall be presumed valid.

The MAA evidences Michigan's strong public policy favoring arbitration. *Marciniak v Amid,* 162 Mich App 71, 76; 412 NW2d 248 (1987). Arbitration clauses should be liberally construed to resolve all doubts in favor of arbitration. *Id.*

The burden of establishing the existence of an arbitration agreement that conforms to the strict requirements of the statute rests with the party seeking to enforce the agreement. *McKinstry v Valley Obstetrics-Gynecology Clinic, PC,* 428 Mich 167, 173; 405 NW2d 88 (1987). Once prima facie evidence of such an agreement has been presented,

the statutory presumption of validity accrues, and the burden of going forward with evidence to rebut the presumption then shifts to the party seeking to avoid the agreement. *Id.* See also, e.g., *McKain v Moore,* 172 Mich App 243, 249; 431 NW2d 470 (1988); *Green v Gallucci,* 169 Mich App 533, 537-538; 426 NW2d 693 (1988).

A trial court's evaluation of the evidence before it and its decision to place the burden of rebutting the presumption of the validity of an arbitration agreement on the plaintiff will not be overturned absent clear error. *Campbell v St John Hosp,* 170 Mich App 551, 557; 428 NW2d 711 (1988), aff'd 434 Mich 608; 455 NW2d 695 (1987). A decision is "clearly erroneous" when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.,* quoting *Tuttle v Dep't of State Hwys,* 397 Mich 44, 46; 243 NW2d 244 (1976).

*Harte v Sinai Hosp of Detroit,* 144 Mich App 659; 375 NW2d 782 (1985), is persuasive. There, the plaintiff gave birth to a child at defendant hospital. After she was discharged, the hospital mailed her "two arbitration agreements and a patient information booklet describing the arbitration agreements and arbitration procedure," one relating to the care of plaintiff herself and the other for her son. *Id.* at 662. Both agreements "obliged [plaintiffs] to arbitrate any claims or disputes, '[w]hich may arise in the future out of or in connection with the health care rendered . . . by [the] hospital [and] its employees.' " *Id.* Plaintiff signed both agreements, but later attempted to revoke them. This Court upheld the circuit court's grant of summary disposition to defendants:

> Plaintiffs . . . argue that alleged malpractice occurring before the agreements were signed is not

covered by the arbitration agreements. We dis-
agree. . . . Since Karen Harte only went to the
hospital once, and testified that she understood
that the agreements related back to the hospital
stay, and since liberal construction is appropriate,
the arbitration agreements apply to malpractice in
connection with plaintiff's son's birth. *Similarly,
plaintiffs' claims which arise out of prenatal care
should also be included in the arbitration proceed-
ing. They are inextricable from the arbitrable
claims because they involve the same damages.* [*Id.*
at 665; emphasis supplied.]

Contract principles apply to arbitration agree-
ments. *McKain, supra* at 253. The question of
when parties become contractually bound depends
upon their intention as manifested by their verbal
statements and conduct in light of all the circum-
stances. *Hawker v Northern Michigan Hosp, Inc,*
164 Mich App 314, 323; 416 NW2d 428 (1987). The
*Harte* Court found that an arbitration agreement
signed *after* the care was rendered related back to
the date of service. We have no hesitation in
holding that a similar agreement signed *before*
elective surgery relates forward to the surgery
itself.

Plaintiff relies on the fact that the arbitration
agreement makes reference to "THIS hospital stay,"
as did the agreements in *McKain, supra,* and
*Haywood v Fowler,* 190 Mich App 253; 475 NW2d
458 (1991), contending that the February 9 visit
was the only "hospital stay" to which the agree-
ment applied. This line of reasoning is without
merit. There is no evidence that plaintiff was
actually "admitted" to the hospital on February 9,
or that she was "discharged" before her admission
on February 12. In other words, there is nothing to
show that plaintiff's February 9 visit constituted a
"hospital stay" at all. *McKain* and *Haywood* are

distinguishable. In *McKain,* the alleged negligence clearly occurred after the plaintiff's discharge from the emergency room in the course of follow-up outpatient care. In *Haywood,* the plaintiff was indisputably discharged from the hospital against medical advice and was readmitted a day later, although for treatment of the same condition. Neither of these factual situations is analogous.

It is manifest from the parties' "conduct in light of all the circumstances," *Hawker, supra,* that the consent form and arbitration agreement signed on February 9 related to the upcoming laparotomy. In an unrebutted affidavit, the manager of the hospital's preadmission testing and endoscopy unit testified that, during the preadmission procedure, "[t]he patient is clearly told that the Arbitration Agreement is for their [sic] upcoming admission." Such habit or routine evidence is admissible in cases involving hospital arbitration agreements; see, e.g., *McKinstry, supra* at 181; *Green, supra* at 538. Plaintiff, by contrast, did not plead and has submitted no evidence that she believed that the arbitration agreement related only to the February 9 procedures. Defendants have presented prima facie evidence of a valid arbitration agreement, and plaintiff has failed to rebut it. The statutory presumption of validity applies; *McKinstry, supra* at 181.

Affirmed.