JOSWIAK v NORTHERN MICHIGAN HOSPITALS, INC

Docket Nos. 147786, 147798. Submitted February 15, 1994, at Grand Rapids. Decided October 3, 1994, at 9:30 A.M.

Sandra K. Jozwiak, as guardian of Mark Coultes, a legally incapacitated person, brought an action in the Emmet Circuit Court against Northern Michigan Hospitals, Inc., and Burns Clinic Medical Center, alleging medical malpractice relating to the care of Coultes. Anida Burd, as next friend of Coultes' minor children, intervened to assert a claim for loss of society and companionship. The court, Richard M. Pajtas, J., granted summary disposition for·the defendants, ruling that the action was barred by a valid medical malpractice arbitration agreement signed by Jozwiak. Jozwiak and Burd appealed. The appeals were consolidated.

The Court of Appeals *held:*

1. A guardian of a legally incapacitated adult has authority to execute a medical malpractice arbitration agreement on behalf of and that binds the ward.

2. A factual dispute exists concerning whether Jozwiak was informed of the nature and effect of the arbitration agreement before she signed it. The matter must be remanded for a determination of the circumstances surrounding the execution of the arbitration agreement, including whether there was fraud or mistake that would serve to rebut the statutory presumption that the agreement was valid.

3. The backdating of the arbitration agreement does not invalidate the agreement but may be considered in determining the reliability of the testimony of the hospital representative who presented the agreement for Jozwiak's signature.

4. The filing of this action did not constitute a revocation of the arbitration agreement because the action was filed beyond

REFERENCES

Am Jur 2d, Guardian and Ward § 107; Parent and Child § 96; Physicians, Surgeons, and Other Healers § 376.

Child's right of action for loss of support, training, parental attention, or the like, against a third person negligently injuring parent. 11 ALR4th 549.

Arbitration of medical malpractice claims. 24 ALR5th 1.

the sixty-day revocation period allowed by MCL 600.5042(3); MSA 27A.5042(3).

5. Delay by the defendants in seeking arbitration did not constitute a waiver of arbitration because the delay was caused by Jozwiak's failure to answer interrogatories and requests for admissions and inform the defendants of her position regarding the arbitration agreement.

6. The Coultes children's claim is derivative and they would be bound by the arbitration agreement if it is determined on remand that the arbitration agreement is valid.

Affirmed in part, reversed in part, and remanded.

1. GUARDIAN AND WARD — MEDICAL MALPRACTICE ARBITRATION AGREEMENTS.

A guardian of a legally incapacitated adult may execute a binding medical malpractice arbitration agreement on behalf of the ward (MCL 600.5041 et seq., 700.455[1][c]; MSA 27A.5041 et seq., 27.5455[1][c]).

2. PARENT AND CHILD — LOSS OF SOCIETY AND COMPANIONSHIP — MEDICAL MALPRACTICE ARBITRATION AGREEMENTS.

A valid medical malpractice arbitration agreement that bars a parent's action for malpractice concerning the parent's treatment also bars a child's derivative action for loss of society and companionship of the parent.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Stanley S. Schwartz* and *Richard D. Fox*), for Sandra K. Jozwiak.

*Donn Hubbell,* for Anida Burd.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather*), for Northern Michigan Hospitals, Inc., and Burns Clinic Medical Center.

Before: TAYLOR, P.J., and MACKENZIE and M. J. MATUZAK,* JJ.

TAYLOR, P.J. Plaintiff Sandra K. Jozwiak, guardian of her brother, Mark Coultes, appeals as of right the circuit court orders dismissing her medi-

* Circuit judge, sitting on the Court of Appeals by assignment.

cal malpractice action against defendants on the ground that her action was barred by a valid arbitration agreement. We affirm in part, reverse in part, and remand.

On February 11, 1989, Coultes sustained injuries in an automobile accident. He was treated in the emergency room of defendant Northern Michigan Hospitals, Inc., and admitted to the hospital for continuing care. Coultes' recovery was progressing normally until February 23, 1989, when he developed a pulmonary embolism, resulting in brain damage and leaving him persistently comatose. On March 22, 1989, plaintiff was appointed temporary guardian for Coultes and was subsequently appointed his permanent guardian, apparently with the assistance of Marlene Guerin, who at that time was Northern's collection supervisor.

On April 4, 1989, Guerin presented plaintiff with numerous papers and forms to sign regarding Coultes' insurance coverage and continued confinement. According to plaintiff, Guerin told her that the papers were merely admission forms. In actuality, one of the papers plaintiff signed was an arbitration agreement backdated to February 11, 1989. Guerin claims that she told plaintiff about the arbitration agreement before plaintiff signed.

Plaintiff commenced this suit on June 25, 1990, and, in its responsive pleadings, defendant Northern affirmatively pleaded the existence of the arbitration agreement. Northern sent plaintiff interrogatories and requests for admission regarding the arbitration agreement, but plaintiff indicated that she could not answer until depositions were taken. Defendants successfully moved for summary disposition on the basis of a valid arbitration agreement.

First, plaintiff raises the issue whether a guardian of a legally incapacitated adult patient can

execute an arbitration agreement on behalf of the patient. Plaintiff argues that neither the Michigan Malpractice Arbitration Act (MMAA), MCL 600.5040 *et seq.*; MSA 27A.5040 *et seq.,* nor the interpretive case law authorizes a legal guardian of an adult patient to execute a valid arbitration agreement on the ward's behalf. Accordingly, she asserts that the arbitration agreement she signed on Coultes' behalf was invalid. We disagree.

In *McKinstry v Valley Obstetrics-Gynecology Clinic, PC,* 428 Mich 167; 405 NW2d 88 (1987), our Supreme Court held that pursuant to § 5046(2) of the MMAA, MCL 600.5046(2); MSA 27A.5046(2), an arbitration agreement executed by a pregnant woman on behalf of her unborn child bound that child to arbitration. 428 Mich 193. In its holding in *McKinstry,* the Court articulated six requirements that must be met before the statutory presumption of validity will accrue. *Id.* at 181. Because only one of the six requirements is pertinent to this issue, we limit our discussion to that requirement, which states:

> (1) a written arbitration agreement complying with the provisions of the MMAA has been signed by the person receiving health care or treatment *or his legal representative.* [*Id.* at 181; emphasis added.]

Accordingly, we hold that plaintiff, as Coultes' legal representative, had authority to execute a valid arbitration agreement on his behalf.

Pursuant to MCL 700.455(1)(c); MSA 27.5455(1) (c), plaintiff has the authority to provide for the care, custody, and control of Coultes, including but not limited to giving "consent or approval that may be necessary to enable the ward to receive medical . . . care." We agree with the trial court

that "[l]ogically, there is no reason not to allow a legal representative, such as a guardian, who can consent to medical treatment on behalf of his or her ward, not to allow that guardian to consent to arbitration." We conclude that a guardian's power is broad enough to encompass the authority to execute a valid arbitration agreement on behalf of the ward.

Plaintiff makes much of the fact that, pursuant to § 5042(3) of the MMAA, MCL 600.5042(3); MSA 27A.5042(3), a patient's legal representative is authorized to revoke an arbitration agreement. Contrary to plaintiff's assertion, the fact that a legal representative is authorized to revoke an arbitration agreement does not provide support for the idea that the legal representative cannot execute such an agreement. It is simply illogical to claim that a legal representative can revoke an agreement that the representative did not have the power to execute in the first instance.

Plaintiff's interpretation of the MMAA ignores Michigan's strong public policy favoring arbitration. *Marciniak v Amid,* 162 Mich App 71, 76; 412 NW2d 248 (1987). To accept plaintiff's interpretation of the MMAA would exclude all legally incapacitated adult patients from the act. We find nothing in the MMAA or in the interpretive case law in support of plaintiff's argument that the Legislature intended to exclude an entire class of individuals from the ambit of the MMAA.

Plaintiff next contends that the trial court erred in granting defendants' motion to dismiss because defendants failed to prove that the arbitration agreement was executed in "strict compliance" with the MMAA. Plaintiff first asserts that the agreement that she signed in April, 1989, was backdated to February 11, 1989. Second, plaintiff asserts that she was never told that what she was

signing was an arbitration agreement. In reviewing summary disposition motions pursuant to MCR 2.116(C)(7), we accept all of a plaintiff's well-pleaded allegations as true and construe them most favorably to the plaintiff. *Grazia v Sanchez*, 199 Mich App 582, 583; 502 NW2d 751 (1993). The motion should not be granted unless no factual development could provide a basis for recovery. *Id.* at 584.

Our review of the record reveals that the arbitration agreement signed by plaintiff was executed in strict compliance with the MMAA in that it met the six requirements articulated in *McKinstry, supra* at 181. However, a factual dispute exists regarding whether Guerin informed plaintiff about the nature of the arbitration agreement. Plaintiff alleges that Guerin asked her to sign several papers, claiming that they were all merely admittance forms. Guerin, on the other hand, asserts that although she gave plaintiff several papers to sign, she specifically discussed the arbitration agreement with plaintiff. This factual dispute bears directly on the validity of the arbitration agreement. Evidence of fraud or mistake could rebut the statutory presumption of validity. *Id.* Accordingly, we reverse the trial court's dismissal of plaintiff's action and remand for an evidentiary hearing to determine the circumstances surrounding the execution of the arbitration agreement.

To the extent that plaintiff argues the misdating of the agreement serves to invalidate it, she is incorrect. The trial court correctly concluded that the variance was not a fatal flaw. *Hawker v Northern Michigan Hosp, Inc,* 164 Mich App 314, 322-323; 416 NW2d 428 (1987). However, evidence that the agreement was misdated would be probative of the reliability of Guerin's testimony.

Plaintiff also argues that the arbitration agree-

ment was timely revoked by the filing of the instant suit. Plaintiff asserts that the sixty-day revocation period is tolled until Coultes' disability is removed. We disagree.

Pursuant to MCL 600.5042(3); MSA 27A.5042(3), the person receiving health care or that person's legal representative may revoke the arbitration agreement within sixty days after discharge from the hospital. Because plaintiff, as Coultes' legal representative, signed the arbitration agreement, the sixty-day revocation period could be tolled only for a disability on her part. Plaintiff in this case never suffered from a disability and therefore the sixty-day period began to run, at the latest, on May 24, 1989, when she became Coultes' permanent guardian. The sixty-day revocation period had expired before the June 25, 1990, filing of this lawsuit. Thus, the revocation was untimely and the filing of this lawsuit did not constitute a valid revocation of the arbitration agreement.

Plaintiff argues that defendants waived their right to arbitration by not asserting it until after mediation and trial were scheduled. After reviewing the record, we conclude that the delay in defendants' request for arbitration was occasioned by plaintiff's failure to answer interrogatories and requests for admissions and inform defendants of her position regarding the arbitration agreement. Accordingly, defendants did not waive arbitration.

Finally, intervening plaintiff, Anida Burd, argues that the trial court erred in dismissing the medical malpractice action brought on behalf of Coultes' children. She asserts that the arbitration agreement did not apply to Coultes' minor children. We disagree.

Like a spouse's claim for loss of consortium, a child's independent action for the loss of society and companionship of an injured parent is deriva-

tive in nature. *Berger v Weber,* 411 Mich 1, 17; 303 NW2d 424 (1981); *Jones v Slaughter,* 54 Mich App 120, 124; 220 NW2d 63 (1974). Because the children's action is derivative, they are bound by the arbitration agreement if, on remand, the agreement is found to be properly executed. *Harte v Sinai Hosp of Detroit,* 144 Mich App 659, 664; 375 NW2d 782 (1985).

Affirmed in part, reversed in part, and remanded.