*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* I. D. VELA, Minor.

UNPUBLISHED
December 29, 2022

No. 362200
Lenawee Circuit Court
Family Division
LC No. 20-000500-NA

Before: HOOD, P.J., and SWARTZLE and REDFORD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor child, IDV, under MCL 712A.19b(3)(c)(*i*) (the conditions that led to this adjudication continue to exist) and MCL 712A.19b(3)(j) (reasonable likelihood of harm). We vacate the order terminating parental rights and remand for proceedings consistent with this opinion.

## I. BACKGROUND

Respondent is the mother of IDV and two other children, NV and KE. In February 2021, respondent voluntarily released her parental rights to NV after nearly a year under foster care management. In a separate proceeding, the trial court also entered an order terminating respondent's parental rights to KE, who lives under a permanent guardianship with respondent's adopted parents.

On May 9, 2021, shortly after IDV's birth, Michigan Department of Health and Human Services (MDHHS) filed an emergency ex parte removal petition for protective custody. MDHHS's petition requested removal because IDV's putative father, IV, was physically abusive toward respondent, respondent was homeless, respondent had a history of drug use and missed drug screens, and respondent failed to make progress with services while under court jurisdiction with NV. Regarding drug use, the petition alleged that respondent missed 23 drug screens between June 2020 and December 2020 and admitted to methamphetamine use in September, October, and November 2020. It acknowledged, however, that respondent denied using drugs while pregnant with IDV, a claim that meconium and umbilical cord tests later corroborated. MDHHS requested that the trial court exercise jurisdiction over IDV and remove IDV from respondent's custody.

-1-

The trial court granted the petition the same day, and MDHHS removed IDV from respondent's custody. In its order to take IDV into protective custody, the trial court stated:

[Respondent] has failed to make progress on her court ordered service plan which consisted of securing and maintaining stable housing, engaging in substance use treatment, engaging in domestic violence/individual counseling[,] and consistently attending visits with her child. [Respondent] has continued to have contact with her significant other, [IV], despite severe domestic violence history and against no contact orders. [IV] is currently incarcerated due to continued to [sic] domestic violence with [respondent] as the victim as well as to continued criminality which includes possession of methamphetamines. As a result of the continued lack of progress, there is a risk of harm to [IDV].

At the preliminary hearing, the court stated that "the issues that arose in the prior petition, namely domestic violence, is the most significant issue that continues to plague the family at this point in time." This issue was also a barrier to reunification in the proceedings involving NV. The trial court entered an order authorizing the petition, placing IDV under MDHHS's care and supervision, and allowing respondent unlimited supervised parenting time.

At a review hearing in June 2021, respondent pleaded no contest to the allegations of methamphetamine use listed in the petition. The trial court exercised jurisdiction over IDV under MCL 712A.2(b)(1) and MCL 712A.2(b)(2). It stated that potential domestic violence in the home and drug use contributing to domestic violence and neglect supported the statutory grounds.

After the order of adjudication and dispositional hearing, respondent participated in services that MDHHS offered, and made significant progress toward most of her identified goals. She participated in drug treatment and regularly tested negative for illegal drug use. Respondent was no longer homeless and obtained adequate housing. She regularly attended counseling sessions. And respondent developed a bond with IDV through parenting time and developed her parenting skills.

The one area in which respondent failed to improve was her continued contact with IV. Throughout her prior case involving NV, there were numerous incidents of domestic violence, with IV assaulting respondent. Many occurred while respondent was pregnant with IDV.[1] IV's domestic violence was apparently exclusively directed at respondent. With the exception of assaults during respondent's pregnancy, there was no evidence of IV assaulting IDV. Throughout the proceedings, there were reports of respondent having contact with IV, despite the court's many warnings that respondent would not regain custody of her child if she continued to see IV. Part of the services offered to respondent included counseling, for emotional stability and her experience as a domestic violence victim. Caseworkers and the court also worked with respondent to develop a safety plan related to IV.

---

[1] Respondent was the victim of at least six incidents of domestic violence with IV as the perpetrator between November 1, 2020 and August 28, 2021, including five that occurred when she was between three and five months pregnant.

Based on respondent's progress with parenting classes and developing a bond with IDV, the court and foster care agency allowed respondent to participate in unsupervised overnight parenting time with IDV, beginning around late July 2021. On March 7, 2022, during one of these unsupervised overnight visits, respondent and IV were seen shopping together. Police later found IV hiding in a closet at respondent's residence. After that incident, respondent's parenting time was returned to supervised only. After that change, IDV's mood improved, she started sleeping though the night, and she stopped getting diaper rashes.

Respondent was discharged from her domestic violence counseling on March 14, 2022 (a week after IV was found in her apartment). Her counselor stated that respondent was discharged because respondent denied that she still experienced symptoms consistent with domestic violence, and she was able to acknowledge that her relationship with IV was "conflictual." At the termination of parental rights hearing, the trial court concluded that respondent was not credible and "suspect[ed]" that respondent was in contact with IV before he was discovered in her apartment on March 7, 2022.

Following a review hearing and permanency planning hearing in April 2022, the court entered an order changing the permanency planning goal from reunification to "adoption and reunification." At the hearing, respondent acknowledged that she violated her safety plan by meeting with IV. She stated that she let her guard down and met with IV in part because he expressed interest in rehab.

On May 11, 2022, MDHHS filed a supplemental petition for the termination of respondent's parental rights. The supplemental petition alleged that the court should terminate parental rights because respondent failed to stop contacting IV and that it would be in IDV's best interest to be permanently placed with the home of her foster parents, where IDV lived since she was one month old. IDV developed a close bond with her nonrelative foster parents, and they wished to adopt IDV.

On June 15, 2022, the court held a combined review hearing and termination of parental rights hearing. At the time of the hearing, respondent was continuing to test negative for controlled substances and continuing to bond with IDV. She had been promoted to a manager at her restaurant job and continued to have adequate housing. She had started individual domestic violence therapy with a new therapist on April 14, 2022. She had previously discussed her domestic violence issues with other mental health therapists, though not necessarily in dedicated domestic violence intervention.

At the end of the hearing, the trial court concluded:

> [T]hat on the issue of domestic violence[,] there is certainly clear and convincing evidence that the conditions that led to the adjudication continue to exist and given the amount of time that [respondent] has had, which is over ten months in this file, as well as, frankly, the demonstration of the pattern in prior terminations supports that there is no reasonable likelihood that the conditions will be rectified with any reasonable time considering the child's age.

* * *

The problem that I have here in a number of these areas is the credibility of [respondent] and that is further supported, okay, so number one, if he [IV] is not around and he has to be found by discovering him hiding within the closet of [respondent's] home, there is certainly no way that we are going to be able to understand whether or not he is or is not there any other time. This court suspects very strongly that he had been there for either very frequent — either very frequently or full-time and it just happened to be once we expanded parenting time that we had that run in where he was discovered.

\* \* \*

There are also concerns under the directive to lead a substance free lifestyle and gain and exhibit an understanding of the dangers that substance abuse poses to the child which was a quote from the case services plan. Again, there was a recent, 4/14 of 2022, bi psycho social assessment wherein [respondent] self-reported that she believes her current alcohol/drug use is excessive, and that is a quote, as indicated by the case worker and the court agrees this recent self-report by [respondent] is of concern.

There is also an indication that one of the parenting times was cancelled due to self-reported illness on April 25th, 2022, associated with excessive alcohol consumption that caused her to vomit blood. So, that is clear and convincing evidence that that particular aspect of substance abuse has not been effectively treated for [respondent].

The trial court also concluded that it would be in IDV's best interest to have respondent's parental rights terminated because IDV has a closer bond to her foster parents than to respondent, IDV requires stability and finality, she is developing well in her current environment, and there is a high probability that IDV could be adopted by the foster parents. The trial court entered an order on June 15, 2022, that terminated respondent's parental rights.[2] This appeal followed.

---

[2] Both sides seek to present evidence to this Court that was not included in the trial court record, and we deny both requests for us to expand the record. Under MCR 7.210(A), this Court does not usually permit evidence that was not in the lower court record to be considered on appeal. Generally, "[t]his Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal." *In re Harper*, 302 Mich App 349, 360 n 3; 839 NW2d 44 (2013) (quotation marks and citation omitted). There is an exception for evidence that shows additional reasons why remanding the case for an evidentiary hearing would be a "useless waste of judicial time." *Hawker v Northern Mich Hosp, Inc*, 164 Mich App 314, 318; 416 NW2d 428 (1987). Although *Hawker* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2).

## II.  STANDARDS OF REVIEW

We review for clear error the trial court's decision that statutory grounds for termination have been proven by clear and convincing evidence, as well as its determination that termination is in a child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012).  "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*.  "This Court gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it." *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014).

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App at 40.  "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

## III. STATUTORY GROUNDS

Respondent argues that the trial court clearly erred when it terminated her parental rights because there were not statutory grounds to terminate her parental rights.  We vacate and remand for the court to clarify how its order does not violate the holding in *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011).

The trial court terminated respondent's parental rights under both MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(j).  For both grounds, the trial court relied heavily on respondent's status as a victim of domestic violence.  Her failure to extricate herself from her abuser and the March 7, 2022 incident provided the catalyst for MDHHS's amended petition and the termination order.

---

Respondent claims in her brief that NV drowned in a pool while the child was placed in foster care.  Although tragic, this event does not bear on the issue of statutory grounds or best interests related to IDV.  We, therefore, do not consider it.

MDHHS seeks to introduce a Blissfield police report dated July 28, 2022, which purports to document additional violent contact between IV and respondent on or around that date.  The report details IV refusing to leave respondent's house before assaulting her.  It also details respondent striking IV with a tire iron after IV hit her.  This proposed evidence does not bear on the legal issues in this case and does not trigger the exception under *Hawker*.  The purported violent contact occurred in July 2022, after the termination order.  Respondent therefore was no longer under the court's jurisdiction.  Further, to the extent that MDHHS offers it as evidence of respondent being a perpetrator rather than a victim of domestic violence, such evidence requires consideration of whether her conduct was in self-defense.  It is more appropriate for the trial court to consider this for the first time on remand as described below.

This Court has held that "it would be impermissible for a parent's parental rights to be terminated solely because he or she was a victim of domestic violence." *In re Plump*, 294 Mich App at 273. If the respondent's *own behavior* is harming the children or exposing them to harm, however, then termination may be appropriate. *Id*. This was the case in *Plump*, where the respondent mother was exposing her children to drugs and unsuitable housing without heat. *Id*. at 271-272. The respondent mother had also exposed her children to a partner who had physically and sexually abused them. *Id*. at 271-273. She continued to associate with the abuser of both children, in violation of her probation requirements. *Id*. at 272.

This Court recently clarified its holding in *Plump* in *In re Jackisch/Stamm-Jackisch*. In *Jackisch*, this Court emphasized that the key question, when domestic violence is the rationale for termination, is which party is the abuser. *Id*. at ___; slip op at 4-5. This Court reiterated that "[t]he fact that respondent was or is a *victim* of domestic violence may not be relied upon as a basis for terminating parental rights." *Id*. at ___; slip op at 4 (emphasis in original). Here, the record is not clear that the trial court made sufficient findings to support termination under either statutory basis.

### A. MCL 712A.19b(3)(c)(i)

Termination under MCL 712A.19b(3)(c)(*i*) is appropriate if one of the "main" conditions that led to the adjudication persists, even if some of the other conditions that led to the adjudication have been resolved by the respondent. *In re Kaczkowski*, 325 Mich App 69, 76-77; 924 NW2d 1 (2018). MCL 712A.19b(3)(c)(*i*), which states:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> \* \* \*

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

At the time respondent's parental rights were terminated, more than 182 days had passed since the trial court's initial dispositional order. The trial court's initial dispositional order was entered on July 20, 2021, and respondent's parental rights were terminated on June 15, 2022. Here, the trial court relied on two "main" conditions: (1) respondent's alcohol and drug addiction; and (2) IV's domestic violence toward respondent.

Respondent made progress on nearly all of the conditions that led to the adjudication. She went from being homeless to having housing suitable for an infant. She participated in parenting time. She went to counseling for both mental health and substance use. And she regularly tested negative for illegal drugs.

Despite her marked improvement related to drug use, the court primarily relied on a single statement in an intake assessment to terminate respondent's parental rights. We acknowledge that the trial court also relied on another incident where respondent cancelled a visitation because she was extremely sick following excessive alcohol consumption. Although respondent was sick to the point of vomiting blood, this incident occurred relatively early in her supervision and did not appear to be the primary focus of the court's findings related to drug and alcohol use supporting termination. Instead, the trial court relied primarily on an April 2022 biopsychosocial assessment,[3] where respondent stated that that her current drug or alcohol use was excessive, despite abstaining from illegal drug use, going to counseling for months, and routinely testing negative. The court's reliance on this to support statutory grounds under MCL 712A.19b(3)(c)(*i*) was misplaced for three reasons. First, a biopsychosocial assessment is an intake tool, not a diagnosis. To terminate respondent's rights for accurately and honestly describing her well-documented, long-standing addiction problem to a new therapist, creates both a disincentive for truthful and good-faith engagement with health providers and a Catch-22. Had respondent denied having drug and alcohol problems, this would undoubtedly be more concerning. Here, however, she accurately assessed that she has alcohol and drug addiction, which persists despite long periods of sobriety. Second, the court's conclusion ignored data regarding respondent's progress, including negative drug screens, participation in drug counseling, stable employment and housing, and sobriety beginning during IDV's gestation. Finally, the court's reliance on this was error because this was not one of the "main" conditions leading to adjudication. That condition was respondent's continued contact with IV. Separating IV from the court's conclusions, there was insufficient evidence of respondent's drinking and drug use to warrant termination under MCL 712A.19b(3)(c)(*i*).

Throughout this case, the court acknowledged that the biggest barrier to reunification was respondent's relationship, and repeated domestic violence incidents, with IV, the second "main" condition under MCL 712A.19b(3)(c)(*i*). This condition still existed when respondent's parental rights were terminated. The court must clarify how its findings and conclusions do not violate *Plump*.

The incident in March 2022, in which IV was found in respondent's closet, shows that respondent had not stopped contact with IV. This was despite the numerous warnings the trial court gave respondent about contacting IV (making it clear that she would not reunite with her child if she had a relationship with IV), and the domestic violence services that had been provided to respondent over the course of this case and her previous case (involving NV).[4] The trial court

---

[3] This Court takes judicial notice that a "biopsychosocial assessment" is an intake assessment that certain mental health professionals use to initially assess treatment needs and goals for new patients.

[4] In her brief on appeal, respondent claims that the services she was given to address domestic violence were not adequate because she should have received more services than counseling for domestic violence. When respondents are not given adequate services to address the conditions that led to the adjudication, it is not proper to terminate their parental rights on the ground that those conditions persist. *In re Newman*, 189 Mich App 61, 67; 472 NW2d 38 (1991) (holding that it was not proper to terminate the respondents' parental rights due to the uncleanliness of their

concluded that respondent is not credible, and speculated that she was in contact with IV throughout the case, even when she claimed she was not in contact with him.

But without more, what we have is a termination of parental rights of a domestic violence victim for being in contact with her abuser. This would violate this Court's holding in *Plump*. See *In re Plump*, 294 Mich App at 273; see also *In re Jackisch/Stamm-Jackisch*, slip op at 4-5. Here, the condition of adjudication that continued to exist was respondent's contact with someone who was abusing her. Although it is undisputed that she never rectified this condition, there is no evidence of harm to IDV or that respondent was an abuser. We acknowledge that there are circumstances where that harm is possible. See *In re Plump*, 294 Mich App at 273. But it must be more than speculative. See *id*. The court's order finding statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*) does not clearly state the non-speculative harm to IDV or other bases for terminating beyond respondent's victimhood. We vacate and remand for the trial court to clarify.

### B. MCL 712A.19b(3)(j)

The trial court, likewise, may have impermissibly relied on respondent's victimhood to find statutory grounds under MCL 712A.19b(3)(j). We vacate and remand for the court to clarify its findings.

MCL 712A.19b(3)(j) provides:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

---

home when the person who was supposed to help them clean refused to do so). However, "[i]n order to preserve an argument that petitioner failed to provide adequate services the respondent must object or indicate that the services provided to them were somehow inadequate[.]" *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502 and 358503); slip op at 2 (quotation marks and citation omitted). Usually, the time to object to the adequacy of a service plan is when the initial case service plan is adopted. *Id*. When "circumstances change," however, a respondent may have other opportunities to timely "object to the adequacy of the services being provided." *Id*. Here, respondent did not complain about the quality of the domestic violence services offered to her before the termination of parental rights hearing; she also did not claim that a change in circumstances made her services inadequate. Therefore, respondent did not preserve this aspect of the issue. Furthermore, respondent fails to list alternate or additional services that should have been provided to address the domestic violence issue.

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Evidence stronger than conjecture is needed to show that there is a reasonable likelihood that the child will be harmed if he or she is returned to a respondent's home. See *In re Sours*, 459 Mich 624, 635-636; 593 NW2d 520 (1999) (declining to sanction termination where finding of reasonable likelihood of harm was "essentially conjecture"). Again, it is impermissible to terminate a respondent's parental rights "solely because he or she was a victim of domestic violence[,]" but termination is permissible when a "respondent's own behaviors [are] directly harming the children or exposing them to harm." *In re Plump*, 294 Mich App at 273. While the record clearly documents a pattern of IV harming respondent, there is no evidence of IV harming IDV since their birth. We acknowledge that IV was violent toward respondent while she pregnant with IDV. But the trial court did not explain, and the record largely does not support, its conclusion that there was a reasonable likelihood of harm against IDV, instead of just against respondent. Despite numerous contacts, and suspected contacts, between respondent and IV, there is no evidence of harm to IDV. The court's order does not clarify the evidence supporting its speculation that IV's violence toward respondent makes it likely that IV will be violent toward IDV. We vacate and remand for that clarification.

## IV. CONCLUSION

For the reasons stated above, we vacate the court's findings as it relates to both statutory grounds. We remand for the court to clarify how its order does not violate this Court's opinion in *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011). We retain jurisdiction.

/s/ Noah P. Hood
/s/ Brock A. Swartzle
/s/ James Robert Redford

-9-

# Court of Appeals, State of Michigan

## ORDER

In re I D Vela Minor

Docket No.  362200

LC No.  20-000500-NA

Noah P. Hood
  Presiding Judge

Brock A. Swartzle

James Robert Redford
  Judges

Pursuant to the opinion issued currently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court.  We retain jurisdiction.

Proceedings on remand in this matter shall commence within 21 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, we vacate the order terminating parental rights related to respondent mother and remand for trial court to address how the termination order is consistent with *In re Plump,* 294 Mich App 270; 817 NW2d 119 (2011).  Upon remand, the trial court should consider any new evidence relevant to its determination.  It may, but is not required to, hold evidentiary hearings or allow the parties to submit additional briefings.  The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand.  Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

December 29, 2022
Date

Chief Clerk